# Perry County *v.* Selma, Marion & Memphis Railroad Company.

*Petition Praying the Court to Authorize Receiver to pay said County certain back Taxes, and application for Re-hearing.*

# Western Railroad Company *v.* Chambers County.

*Bill in Equity to Enjoin Collection of Taxes.*

# Savannah & Memphis Railroad Company *v.* Weaver, Tax Collector, *et al.*

*Bill in Equity to Enjoin Collection of Taxes.*

1. *Interpretation of Constitution as to enacting statutes; rule.*—The only safe rule for interpreting clauses of the Constitution, which command certain things to be done, or certain methods to be observed in the enactment of statutes, is to hold, when it is affirmatively shown by legal evidence, that, in the attempt to legislate, some mandate of the Constitution has been disregarded, such attempt never becomes a law.

2. *Same; presumption as to entries in journals of legislature.*—Except as to those matters which the Constitution declares shall appear on the journal, the rule is to infer everything was rightly done, unless the journal shows affirmatively that some constitutional demand was disregarded. The presumption, in the absence of proof, is always in favor of official propriety.

3. *Same; bill for raising revenue, what is; must originate in the House; act approved February 1870 declared unconstitutional.*—The bill to be entitled an act "To amend an act entitled an act to establish revenue laws for the State of Alabama," approved Feb. 9th, 1870, was a bill for *"raising revenue,"* within the meaning of the Constitution of 1868 (art. 10, § 15), which must originate in the House of Representatives; and it affirmatively appearing from the journals that said bill originated in the *Senate*, it is therefore declared unconstitutional and void. (MANNING, J.—of the opinion that the question as to

Vol. LVIII.

[Perry County et als. v. Railroad Company et als.]

whether the bill was properly introduced in the Senate first, was a question for the legislature and not for the courts.

4. *Bill for raising revenue; definition; what included.*—A bill for *raising revenue,* as termed in the Constitution, is a bill providing for the levy of taxes as a means of collecting revenue—hence, a bill for *reducing taxation,* if it provides for collecting revenue, is still a bill for "raising revenue."

5. *Revenue law of 1868; two distinct systems provided; assessments by auditor and assessor.*—Under the revenue act of 1868, two distinct systems of assessment are provided; one of general subjects of taxation, which is required to be made by the assessor; the other, of railroads and their rolling stock, which duty was cast on the auditor. There has been no law since before December 31st, 1868, which authorized the tax assessor or collector to assess railroads or their rolling stock.

6. *Same; no provision for county taxes; levy of county taxes.*—Under said act there is no such thing as an assessment of property for county taxes; the assessment is for State taxation alone. But after equalization of the assessment by the county board, the court of county commissioners levy a tax on the State assessments to provide for county expenses. State taxes are *assessed,* county taxes are only *levied.*

7. *Assessment necessary before collection of taxes.*—There must be an assessment, either pursuant to or adopted as a basis of the levy, before there can be a lawful collection of taxes.

8. *Escaped taxes; what are not; power to assess.*—In the acts of 1868, and 1875, "to establish revenue laws for the State of Alabama," are clauses which empower the assessor and collector, in certain conditions, to assess property which had escaped assessment during previous years; but those clauses give no authority to such officers in the cases under discussion, because, 1st, this is not property which has escaped assessment—these railroads having been assessed each year for State taxes; 2d, the assessor had no authority to assess railroads or their rolling stock, and hence it cannot be affirmed that they have escaped the assessor,—the auditor was the assessor and they had not escaped him; 3d, as there is no authority to *assess* any property for county taxes, and the railroads were assessed for State taxes, they did not escape any assessment which the law authorized to be made.

9. *Commissioners' court; no power to levy on railroads for escaped taxes.*—The court of county commissioners has no authority to levy taxes on railroad property, which has escaped them during previous years; such authority can only exist by statute, and the statute has not conferred it.

10. *Instructions by auditor to county officers; what not binding; liability of railroad for back taxes.*—Under the act approved Feb. 9th, 1870, above declared unconstitutional, the auditor instructed the tax collector of Perry county not to collect of the railroad company the county taxes for the year 1869, whereupon the tax collector did not collect such taxes; *held,* not to be an instruction as to any matter arising under the revenue law of 1868, and hence not binding on the county officer; and the railroad company is liable to pay the county tax levied for the year 1869.

11. *Provision of revenue law of 1875; what merely directory.*—Section 93 of the revenue law of 1875 providing that the county tax be levied in July, is merely directory, and such a levy made at the regular August term of the court of county commissioners is valid.

[HEAD NOTES TO THE OPINION ON PETITION FOR RE-HEARING]

12. *Back taxes collectable; legal liability of tax-payer; when enforced by common law action.*—Taxes may be collected, under our statutes, after the expiration of the tax year in which they are assessed. The levy and assessment creates a legal liability on the tax-payer to pay, which, according to a preponderance of authorities, may be enforced by an action at common law, unless the statutes provide an exclusive remedy.

13. *Duty of tax collector as to back taxes; limitation.*—It is the duty of the tax collector to ascertain and collect delinquent taxes assessed for precedent years, and this duty is limited by the acts of 1876-7, (now § 421 of the Code,)

to the extent that he reports insolvencies which are so allowed by the court of county commissioners, and those cannot be collected.

14. *Limitation barring suit by county, for taxes.*—A county is not exempt from the operation of statutes of limitation ; but there is no such statute or provision applicable to a claim for taxes due, and there is no bar to such action short of the presumption of payment after the lapse of twenty years.

15. *What acquiescence no bar to claim*—That the commissioners' court acquiesced in the unconstitutional act of 1870, *supra,* (which remitted certain taxes assessed against the railroad company) by not requiring the tax collector to collect or account for the said company's tax the previous year, is no surrender of the claim, or bar to its present assertion.

### PERRY COUNTY V. THE SELMA, MARION & MEMPHIS R. R. CO.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. CHARLES TURNER.

This case was decided upon demurrers to a petition which averred in substance as follows : That in the year 1869, the president and secretary of said company, in accordance with the provisions of section 24 of the Revenue Law of Alabama, approved December 31st, 1868, made and returned to the auditor of the State of Alabama, a statement, as required by said section, that said company had 20½ miles of main and side track in said county, the total value of which was $184,500, and also, a statement of rolling stock, valued at $18,015, which the auditor apportioned to said county, of which, together with the value of the track, said auditor notified the assessor of Perry county, and thereupon said company was, for the tax year 1879, assessed on the total sum a State tax of ¾ of 1 per cent.; that the commissioner's court of said county did proceed, levy, and assess on the 19th day of August, 1869, for county purposes, a tax of 85 per cent. of the State tax assessed upon all of the said taxable property of said company; but said tax was never collected, because the legislature, by an act, approved February 9th, 1870, attempted to so amend said section 24 of the said revenue law of 1868 as to exempt said property from taxation for county purposes; that said act of February 9th, 1870, was in violation of the Constitution of Alabama, then in force, and was utterly void, and that said company was, and is now, legally and justly indebted to said county in the sum of $1,291.03 for the tax of the year 1869, for the payment of which a paramount lien was given by section 14 of said revenue law ; that a similar tax became due and payable from said company for and during the years 1870, 1871, 1872, 1873, and 1874, but which was never assessed or paid, and is still due. The prayer of the petition is for an order and decree directing and requiring the receiver, Alpheus M. Fowlkes, to pay the amount of said tax due for the year 1869, out of any money belonging to said company in his hands,

[Perry County et als. v. Railroad Company et als.]

or, in default thereof, the enforcement of said lien by a proper decree; and, as to the said taxes due for the years 1870, 1871, 1872, 1873, and 1874, it is prayed that a proper decree be rendered establishing the same, and that said receiver be ordered to pay the same to petitioner; and other orders and decrees necessary to establish the rights of petitioner.

For grounds of demurrer to said petition, the said railroad company assigned the following:

1. That it does not appear by said petition, and by reference to the acts of the legislature therein cited, that the petitioner is entitled to have and collect the taxes mentioned in the petition, the same not being warranted by any law of Alabama.

2. It does appear by said petition that petitioner has no right to collect the tax alleged to be due from the said defendant, and for further causes of demurrer, the following were subsequently stated:

1. That it appears from said petition that the tax levied in said county as county taxes for the year 1869, was released by the legislature of the State of Alabama, and it appears from said petition that none of the taxes claimed in said petition, except for the year 1869, were ever assessed.

2. That it appears from said petition that no part of the taxes claimed in said petition was ever legally assessed.

3. That it does not appear from said petition that said petitioner has any legal right to the taxes claimed therein.

4. That the said county of Perry, in the said petition, does not show any power or authority in the said county to levy and assess the taxes claimed in said petition.

The Chancellor sustained the demurrer and dismissed the petition at the cost of the county.

The appellant, Perry county, now assigns said decree as error.

### WESTERN RAILROAD OF ALABAMA V. CHAMBERS COUNTY.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. N. S. GRAHAM.

Complainants in this case, the said railroad company, filed their bill the 15th of March, 1876, alleging, among other things, that the said county of Chambers, through its court of county commissioners and tax assessor and collector, has attempted to assess and levy a county tax for the year 1875, on that part of complainant's road-bed, main and side track, situated in said county, and that said county is now proceeding by and through its tax collector, Julius G. Weaver, to collect said tax by a levy upon property of complainant, loca-

ted in said county; that the amount of said tax claimed is $1,03ծ.64, that said county also levied for and in behalf of the State of Alabama, $838.90, which amount complainant has paid in full. Complainant further avers that the only notice of apportionment issued by the auditor with regard to said railroad tax for 1875, was the following :

STATE OF ALABAMA, AUDITOR'S OFFICE,          } ·
Montgomery, Ala., August 13, 1875.          }

*Tax Assessor of Chambers County* :

SIR : The following valuation of railroad property is furnished for your guidance in compliance of section 21, Revenue Laws :

| Western Railroad. | Value. |
|---|---|
| 14 miles main and side track.................. | $83,700 00 |
| Proportionate value of rolling stock ........... | 20,164 20 |
| Total value............................... | $103,864 20 |

This assessment is made under the revenue laws of 1868, and apportioned to counties for collection under the revenue law of 1874-5, in compliance with the provisions of an act "to continue in force certain parts of the revenue laws," &c., approved March 10, 1875.

No assessment can be made on above property for county purposes for the present year.

(Signed)          R. T. SMITH,
Auditor and Chairman of Board of Equalization.
By M. L. W.

Complainant further avers that said tax amounts to 1 per cent. on the value of the property when it should not exceed one-half of one per cent., which complainant is willing to ·pay, &c. And complainant further avers that the commissioners' court of said county did not levy the tax for county purposes at their July term for 1875, but all the action was taken at their August term for said year, &c. The bill concludes with a prayer to perpetually enjoin the collection of said tax, and for general relief.

Respondents, in their answer, state, among other things, not necessary to be here noticed, that a tax of one-half of one per cent. was levied for county purposes under the general revenue laws, and an additional tax of one-half of one per cent. for the purpose of paying and redeeming the bonds of said county, issued under an act approved Feb. 7th, 1870, as amended Feb. 24th, 1872, which act authorized such additional levy ; and that the taxes for county purposes were levied at a regular August term, 1875, of said court of county

commissioners. The respondents also interposed several demurrers as follows:

1st. That there is no equity in the bill.

2d. The bill fails to show that said taxes were illegally assessed and levied, and that the amount therein stated as due the respondent, Chambers county, is not legally due.

3d. The facts stated in the bill show that the property of the railroad company was liable for county taxes in the county of Chambers.

The record also shows an agreement of facts submitted by counsel, showing the value of the property of said company, as returned to the auditor by the president and secretary, or fixed by the board of equalization; and other matters, not necessary, under the view taken of this case, to be here stated.

The Chancellor rendered his final decree dismissing the complainant's bill, and refusing the injunction prayed—which decree is now assigned as error.

## SAVANNAH & MEMPHIS RAILROAD COMPANY V. WEAVER, TAX COLLECTOR, ET AL.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. N. S. GRAHAM.

This case involves several of the questions contained in the other two cases, the facts differing so immaterially that they need not be stated. The bill prays for a writ of injunction restraining said tax collector from collecting county taxes of said railroad company for the year 1875. The Chancellor dismissed the bill with costs, and refused the injunction. The decree is now assigned as error.

JAS. E. WEBB, with whom was A. C. HOWZE, for Perry county.—1. Did sec. 120 of the revenue law of December 31, 1868, confer any judicial power on the auditor? The jurisdiction to construe a law exclusively belongs to the judicial department.—*Ala. Ins. & Trust Co. v. Boykin*, 38 Ala. 573; Cooley's Const. Lim. pp. 90, 91. The auditor is a member of the executive department.—Sec. 1, art. 5, Const. 1868. Section 2, article 3 of the said Constitution, expressly prohibits any person of the executive department from exercising any power properly belonging to the judiciary.

2. If there was a valid levy and a valid assessment during the years 1870 to 1874, then there is no impediment in the way of the counties now, by the aid of a court of equity, to enforce the lien created by section 14 of the act approved December 31st, 1868.—See *Hine v. Commissioners*, 17 Wall.; *Eschoack v. Pitts*, 6 Mo. 71; 3 Otto, 428.

3. The failure of the auditor to pro-rate the value assessed by him upon the rolling ·stock, cannot defeat the Constitution and law, both of which demand uniformity of taxation. Section 24 of the act of 1868 conferred power on the auditor to apportion the value of the rolling stock. The value of the road-bed, side and main tracks is returned by the railroad company to the auditor. The assessment was complete when the auditor listed and fixed a valuation upon the property.— Cooley on Taxation, 258; Hilliard on Taxation, p. 290, § 2.

4. If the act of 1870 never became a law, then there is no statute authorizing the auditor to collect from the railroads any tax. Therefore, whilst they did not escape *assessment* they escaped *taxation*, both for State and county purposes, in the previous assessments of 1870 to 1874, and are, therefore, excluded within the broad language of section 392 of the Code.

5. The lien for taxes over-rides all other liens and is not extinguished by delay in its enforcement.—Cooley on Taxation, p. 306; *Swan v. Knoxville*, 11 Humph. 130, 132; *Holdon v. Eaton*, 7 Pick. 15; *Eschoack v. Pitts*, 6 Mo. 71. And a change in the ownership will not affect such a lien.— *Oldham v. Jones*, 4 B. Mon. 458, 465; *Covington v. Boyle*, 6 Bush, 204. See as to such lien authorities cited in Cooley on Tax. p. 205-6. Notwithstanding the repeal of the revenue law of 1868, the right to collect these taxes, which were assessed and levied in accordance with it, are expressly preserved by the proviso to sec. 4, of chap. 11 of the act, approved March 6th, 1876, and by sec. 10 of the Code.

W. M. BROOKS, *contra;* and JNO. F. VARY, on petition for rehearing.—1. The court of county commissioners had full power and authority to determine whether or not the claim of the county for these taxes for the year 1869 should be relinquished, and the tax collector be credited for the amount of the same.—*Lehman, Durr & Co. v. Robinson*, present term. And on account of such relinquishment the county lost its lien, and there is no way to reacquire it.

2. See the case of the *Mobile and Girard R. R. Co. v. Peebles*, 47 Ala. 317.

3. The county of Perry had no right to come into a court of chancery, at least until it had exhausted the remedies given by the statute to collect taxes—this had not been done. By all means, to entitle said county to come into chancery by its petition to collect the taxes for 1869, it must show by a statement of facts that it has a lien. It must show that it never acquiesced in the act of February 9, 1870. It must show that it never, by the action of its county commissioners

[Perry County et als. v. Railroad Company et als.]

court, or otherwise, relinquished its claim to said taxes—all of which the petition fails to show.

GEO. P. HARRISON and WATTS & SONS, for the Western Railroad Co.—1. The Chancery Court has power to grant injunction to restrain the collection of taxes when they are illegal, or when the tax collector is insolvent, and irreparable injury would result from the seizure and sale of the property. See *Warring v. Mayer, &c.,* 41 Ala.; *Lott v. Ross & Co.,* 38 Ala. 156; *Lyon v. Hunt,* 11 Ala.; *Thomas v. James,* 32 Ala. 723; Cooley on Taxation, 540, 541, 548, 536, 538–9; *Lott v. Hinson,* 40 Ala.; *Lott v. Mobile Trade Co.,* 43 Ala. 578. And the facts set forth in the bill show each of these essentials to chancery court jurisdiction.

2. The act of the ninth of February, 1870, provides that the tax on railroads shall be for State purposes only, and this act was so construed and held to be constitutional in the *M. & G. R. R. Co. v. Peebles,* 47 Ala. 317. This law was in force during the year 1875, and the railroad company was not liable for county taxes that year.

3. Taxes, to be valid, must be *assessed* by the proper person and at the time prescribed by law.—See Cooley on Taxation, 217 and notes. In this case, under the revenue act of 1875, the law required the assessment of the county tax to be made at the July term of the commissioners court, while the answer to the bill admits that the assessment of this railroad tax was not made until the August term of said court; and such assessment was, therefore, illegal.

4. The legal effect of the act of the 19th of March, 1875, is to suspend the operation of the general revenue law for that year, except as to the *collection* of taxes. The auditor so certified to the Chambers county assessor, at least so far as railroads are concerned. This leaves the commissioners court of Chambers county without authority to assess the appellant for 1875. The State taxes for that year were paid.

5. It is contended by appellees' counsel that the "act to empower the county of Chambers to issue bonds," &c., (see Acts 1869–70, p. 78,) and the amendment thereto (see Acts 1871–2, p. 363,) operate to allow the assessment in this case. This act does not undertake to declare on *what property* this special tax shall be levied, and in the absence of such provision, the county could not levy on property which, by the general law, is exempt from the payment of county taxes.

6. It is said by the counsel for appellee that the act of the 19th of March, 1875, can not have the effect of repealing the act of the 20th of February, 1875, because the latter is a special act, and the former general, and that the rule is

that general laws do not repeal special acts, unless the special act be named. This is not the correct statement of the principle. The general rule is that "a subsequent law, if inconsistent with a former one, always repeals the former, unless the former is expressly excepted ; and it makes no difference that the former is a special law."—See Smith's Com. on Stats. § 788 n., p. 905; also, pp. 897–8, § 777; Sedgwick on Stat. & Const. Law, 124. The cases of *Daughdrill v. Ala. L. & Ins. Trust Co.* 31 Ala. 91, and *Mobile & Ohio R. R. Co. v. The State*, 29 Ala. 573, are not inconsistent with these views.

J. J. ROBINSON, *contra.*—1. It may be laid down as a general rule (says High on Injunctions, p. 194,) that equity will not interfere to restrain a tax which is illegal or void, *merely because of its illegality*, but there must be some special circumstances attending the injury threatened, to distinguish it from a mere trespass, and, this being the case, within some recognized need of equity jurisprudence; otherwise, the person aggrieved will be left to his remedy at law." Citing *Daws v. Chicago*, 11 Wall. 108 ; *Heywood v. Buffalo*, 14 N. Y. 534, and other authorities.—See, also, Cooley on Taxation, p. 536; *Eve v. The State*, 21 Geo. 50; *Cody v. Lunard*, 45 Geo. 85; *Mechanic's, &c. Bank v Debolt*, 1 Ohio St. 591; *Exchange, etc. v. Hines*, 3 Ohio St. 1; *Chicago, etc. v. ———*, 22 Ill. 34; *LeRoy v. New York*, 4 John. Ch. 352; *Moore v. Medley*, 6 Johns. Ch. 28; *Kilbound v. St. John*, 59 N. Y. 21.

2. When the act, approved February 20, 1875, to repeal the act approved February 9, 1870, so far as the same relates to Chambers, Tallapoosa, Lee and Barbour counties, became a law, its legal effect was to restore to those counties section 24 of the act approved December 31, 1868, and said section 24 being so restored, it was as effectual for the present purpose, as if it never had been repealed.—See *M. & O. R. R. Co. v. The State*, 29 Ala. 573 ; *Rawles v. Kennedy*, 23 Ala. 240; *Pearce v. Bank of Mobile*, 33 Ala. 693.

3. Is it correct that the failure, from any cause, of the commissioners to levy the tax, for county purposes, on the second Monday in July, avoids the levy made on the second Monday in August following, at a regular term of said court? If so, it is apparent that county revenues must, occasionally at least, in our county, depend upon the condition of "bridges and high water," to enable a quorum of the court to reach the office of the probate judge promptly on the day named. If such levy is void as to complainants, it is void as to every tax-payer in the county. The only case that I have been able to find on the subject, is *Weaver v. The State*,

39 Ala. 539, where the court failed to decide this precise point, "leaving it open and undecided." The case of *Wightman v. Kassue*, 20 Ala. 446, cited by the other side, does not reach this case. That was where a claim was audited and allowed at a *special* term, while these proceedings were had at a *regular* term of the commissioners court, named by law. There is nothing in such act of said court that resembles judicial proceedings. Again, in the language of Mr. Cooley, "When the illegalities complained of affect only the person complaining, an injunction which restrains the collection as to him, may very properly be awarded, if a sufficient case is made out, there being no considerable mischief thereby; but when they affect the whole tax levy (as in this case), a court should be extremely cautious in awarding on the complaint of one person, a process which may reach the case of others not complaining, and which may seriously embarrass all the operations of government depending on the sources of revenue, which by means of it would be stopped."

4. The act of February 9, 1870, exempting railroads from the payment of county taxes, is unconstitutional.—See argument of Stone & Clopton in case of *Mobile & Girard R. R. Co. v. Peebles*, 47 Ala. 323.

W. H. BARNES, for the Savannah & Memphis R. R. Co. (No brief came to Reporter.)

J. J. Robinson, *contra*, filed the same brief, in this case, as in the case of *Western R. R. v. Chambers County*,—which brief is above condensed.

STONE, J.—Section 15 of article 4 of the Constitution of 1868, ordains "that all bills for raising revenue shall originate in the house of representatives, but the senate may amend or reject them as other bills." Substantially the same provision is found in all our constitutions, from that of 1819 to the last one in 1875. It has been suggested that this is a mere rule for the legislature, a disregard of which does not invalidate the law. It is known to the profession that this rule was adopted from the British constitution; and that it was engrafted thereon, because the House of Commons, in their Parliament, is the only popular department of their government, chosen by the people, and directly accountable to them. In that country, unlike the rule with us, it is the rule that the House of Lords can make no amendment of such bills, but must take them, without amendment, as they leave the House of Commons. This rule is guarded with sedulous care, and is treasured as fundamental, in the pres-

ervation of the subject's goods from unreasonable assessment and spoliation.

With us the reason of the rule does not exist to the extent it does there, for each house of the legislature is elected by the people for a short term, and each is alike accountable to the popular will. But whether there be a reason for its maintenance or not, it has been a canon of the Federal Constitution from the date of its adoption, and of the Constitution of this State from the time of its birth. A rule thus sanctioned and preserved—thus imbedded in the very marrow of our system—we feel not at liberty to disregard. We adopt, as our own, the language of one of the soundest and most thorough thinkers and jurists, who have written on the subject of organic law, embodied in our constitutions:

"The courts tread upon very dangerous ground when they venture to apply the rules, which distinguish directory and mandatory statutes, to the provisions of a constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and fix those unvarying rules, by which all the departments of the government must at all times shape their conduct. . . We are not, therefore, to expect to find in a constitution provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in our instrument which, for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised as well by the delegate, as by the sovereign people themselves. If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only."—Cooley Const. Lim. 78.

We think the only safe rule for interpreting clauses of the Constitution which command certain things to be done, or certain methods to be observed in the enactment of statutes, is to hold that when it is affirmatively shown by legal evidence that in the attempt to legislate, some mandate of the Constitution has been disregarded, such attempt never becomes a law. We do not mean to be understood as affirming that in all cases the silence of the journal proves some constitutional requirement was omitted. It is only when the Constitution requires that certain things shall be spread on

the journal, that its silence affects the constitutionality. The presumption, in the absence of proof, is always in favor of official propriety; and, except as to those matters which the constitution declares shall appear on the journal, the rule is to infer everything was rightly done, unless the journal shows affirmatively that some constitutional command was disregarded.—See *State ex rel v. Buckley*, 54 Ala. 599; *State ex rel v. Morrow*, at present term; Cooley Const. Lim. 139.

We have not been able to find any direct judicial determination of the question, how far a disregard of the clause of the Constitution, copied in the opening of this opinion, affects the validity of a statute enacted to raise revenue. In *Harper v. Commissioners of Elberton*, 23 Geo. 566, it was conceded, rather than decided, that such act would be unconstitutional. A controversy arose on this question between the two houses of the 42nd Congress, but it resulted in no practical solution.—See note to section 880, 1 Sto. on Const. 4th ed.

The bill to be entitled an act " To amend an act entitled an act to establish revenue laws for the State of Alabama," and which is published as a law approved February 9, 1870,— Pamph. Acts, 87—originated in the Senate, as is shown by the journals of that session. We have carefully examined the journals, and can safely say this is affirmatively shown. The question arises, was this a bill for 'raising revenue' within the meaning of the Constitution? It is clear to our minds that increase of revenue is not implied in the language to 'raise revenue.' The transitive verb, 'to raise,' in this connection, means, "to bring together, to collect, to levy, to get together for use or service; as to raise money, troops, and the like."—Webst. Dictionary. The precise meaning in this clause is, to levy a tax, as a means of collecting revenue. See *Harper v. Commissioners of Elberton, supra*.

The act in question, in one sense, reduced the taxes; for it assumed to relieve certain railroad property from county taxation. But it was, nevertheless, a bill to raise revenue. It assumed to repeal section 24 of the revenue law of 1868; levied a tax for State purposes on the right of way, road bed, side-track, main-track, locomotive engines, passenger, freight, platform, construction and other cars, of all railroads in this State, and constituted the auditor both assessor and collector of this tax. If the bill became a law, the repeal of said section 24 of the act of 1868, effected thereby, left its own provisions as the only levy of a tax on railroads and their rolling-stock, and the only authority for assessing and collecting such tax; for, by such repeal, said section 24 of

the act of 1868 ceased to exist. It also made provision for the assessment, by the county assessor, of other property of railroad companies, not enumerated above, that had its situs in the county; and changed the time when such tax should become delinquent. These provisions clearly show that the law we are considering was one to raise revenue; and as the bill originated in the Senate, it is unconstitutional, and never had a legal existence. We must, therefore, dispose of these cases, as if that statute had never been attempted to be enacted.

The act " To establish revenue laws for the State of Alabama," approved December 31, 1868—Pamph. Acts, 297 to 340—declares the general subjects of taxation in sections 4 to 13, inclusive, but makes no mention of railroads. Sections 19 to 23, inclusive, declare the duty of tax-payers to render to the tax-assessor of the county a "complete list" of these general subjects of taxation. Sections 29 to 40, inclusive, define the duty of the tax-assessor in assessing the taxes. He is required to fill up an assessment list for each tax-payer, which is to be signed and sworn to by the tax-payer.—Sec. 23. These assessments are to contain the " amount or value of each item, as valued by the assessor, upon which they are liable to pay taxes."—Ib. All these are to be entered in a book, &c., by the assessor.—Sec. 37. None of these provisions mention railroads. Other and later provisions relate to licenses, with which the assessors have nothing to do. All these provisions relate to State taxes, as we shall hereafter show.

Sections 24 to 28 of the act, relate to railroads and telegraph companies; and the provisions in regard to these are entirely different. As to these, the assessor has nothing to do with the sworn list of the tax-payer, nor in the matter of fixing the values. These duties are confided to the auditor, who is to notify the assessor thereof. The assessor, it is true, is required to assess the local property of the railroad in his county; but of the road proper, and its rolling stock, he has nothing to do with the assessment. He simply assesses, and adds the other local property to the assessment, which has been made and furnished to him by the auditor. Nor has the board of equalization, sections 97 to 101, inclusive, any power or jurisdiction over these assessments made and furnished by the auditor. We have thus shown that under the act of 1868, two distinct systems of assessment are provided: One, of general subjects of taxation, which is required to be made by the assessor; the other, of railroads and their rolling stock, which duty is cast on the auditor. There has been no law, either on or since December 31st,

1868, which authorized the tax-assessor or tax-collector to assess the taxes on railroads proper, or their rolling stock. There is, under the act of 1868, no such thing as an assessment of property for county taxes. The assessment is for State taxation alone. After the assessor completes the assessment, and makes his returns to the probate judge, under section 96 of the act, it is the duty of the board of equalization, to make an equalization of the assessment for that year.—Sec. 98. The clause of the statute in reference to the levy of the county tax, is in the following language:

"Sec. 103. That it shall be the duty of the court of county commissioners, immediately after the adjournment of the board of equalization, to proceed to levy the amount of taxes required for their county for that year, not to exceed the rate levied by the State."

Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subjects and rate of taxation.—Burroughs on Taxation, 194; Cooly on Taxation, 244–5. Assessment is *quasi* judicial, and consists in making out a list of the tax-payer's taxable property, and fixing its valuation or appraisement.—Hilliard on Taxation, 290. Taxable property is here used in its broad sense, and embraces all subjects of taxation, on which a tax has been levied by the law-making power. The distinction is the difference between prescribing a *rule* of action and *administering* that rule to persons and subjects that fall within its provisions. The legislature levies State taxes, and the tax-assessor assesses them, except the tax on railroads and their rolling stock, which is assessed by the auditor. The court of county commissioners levies the county tax, providing for no assessment, but adopting the State assessment, as the basis and measure of the tax-payer's liability. It also adopts the aggregate of the State assessment as the basis and postulate by which it adjusts the county levy, so as thereby to raise the required sum to meet the county wants. These are the data which enable the court to determine the proper per centage to be levied on the State assessment, to provide for county expenses. Hence the levy, *per centum*, will be greater or less, in the proportion which the county demands bear to the aggregate of the State assessment. State taxes are assessed; county taxes are only levied. A law which levies a tax, and provides for its assessment, will not justify the collection of the tax until the assessment is first made. To attempt otherwise, would be equivalent to an attempt to execute a law against a person or thing before it had been judicially ascertained and detertermined that such person or thing was amenable to its provisions. There must

be an assessment, either made pursuant to the levy, or adopted as the basis of the levy, else there can be no lawful collection of taxes. In Hilliard on Taxation, 291, it is said, "Assessment is so far an indispensable incident to taxation, that no right of action arises until a legal assessment is made. . . Even a payment of money as taxes on property before the assessment, and the collector's receipt therefor, are no legal discharge of taxes subsequently assessed thereon." So in Cooley on Taxation, 259, it is said, citing many authorities, that, "Of the necessity of an assessment, no question can be made. Taxes by valuation can not be apportioned without it. Moreover, it is the first step in the proceedings against individual subjects of taxation, and is the foundatian of all which follow it. Without an assessment they have no support, and are nullities."—See Burroughs on Taxation, 205.

In the case of the *County of Perry v. Selma, Marion & Memphis Railroad Company*, it is shown by the averments of the petition that no county tax was levied for the years 1870-1-2-3-4. In the acts of 1868 and 1875, "To establish revenue laws for the State of Alabama," are clauses which empower the assessor and collector, in certain conditions, to assess property for taxation, which had escaped assessment during the previous years.—See sections 36 and 50 of the act of 1868, and sections 32 and 46 of the act of 1875. See, also, *Lehman, Durr & Co. v. Robinson*, during the present term. Those sections give no authority to the assessor or collector in either of the cases under discussion ; because, first, this is not a case of property which has escaped assessment for any previous year. All the railroads, so far as we are informed by the records, were assessed, each year, for State taxes. The property, then, had not escaped the assessor, and had not escaped taxation. Second, the assessor had no right to assess railroads or their rolling stock for taxation, and hence it can not, under fair construction, be affirmed that they had escaped the tax assessor. The auditor was the tax-assessor for these, and they had not escaped him. If they escaped any official authority, it was the court of county commissioners, and they escaped levy, not assessment. Third, as there is no authority to *assess* any property for county taxes, and the railroads were assessed for State taxes, it is not true that they escaped any assessment which the law authorizes to be made.—See *State of Mo. ex rel. v. Severance*, 55 Mo. 378–383.

There is no power conferred by any of the statutes to assess escaped taxes, except that given to the assessor and collector in the sections above referred to. There is no power given to levy county taxes, save that conferred on the court

of county commissioners in the section above copied. If omitted county taxes, for previous years, can be levied, it must be done by that court; for on it is conferred all the power the legislature has granted to levy county taxes. There is no power conferred on that court, by express provision, to levy for escaped taxes. Can the power be implied? In Burroughs on Taxation, 197, it is said: "Property is often omitted from the roll by the assessors for one or a number of years, and most of the States have statutes authorizing the assessors, when they ascertain such omissions, to place the property on the roll, with the tax extended not only for the current year, but for the past years. The legislative authority given to tax the property for the omitted years, is not exhausted by the failure of the party or the assessor to place it on the roll, and such assessments are valid. But, in making such re-assessments, the statute must be strictly followed. . . Their duty is ministerial; they are to do a specific thing, and they have no discretion."

We hold that the court of county commissioners has no authority to levy taxes on railroad property which has escaped them during previous years. Such authority can only exist by statute, and the statute has not conferred it.

Another argument: Levy of taxes for county wants, is an express, fixed per cent. on the State assessment. The gross amount of such assessment, and the wants for county support, furnish the rule by which the needed per centage is arrived at. If the State assessment, which furnishes the standard for adjusting the county levy, be materially augmented, then the rate *per cent.* necessary to raise the requisite county revenue, will be proportionately diminished. If a first levy, on a part of the State assessment, yielded sufficient county revenue, then a like per cent. levied on a materially increased assessment, would necessarily yield a surplus. This, however, would furnish no ground for vacating the levy, if it were otherwise made according to law.

In the case of *Perry County v. Selma, Marion & Memphis Railroad Company*, the petition avers that the county tax for 1869, was levied by the court of county commissioners. Under the act approved February 9th, 1870, which we have above declared to be unconstitutional, the auditor instructed the tax-collector not to collect of the railroad company the county taxes for the year 1869; and the tax-collector obeyed him, and did not collect the taxes. Section 120 of the act of 1868, is relied on as justifying this action of the tax-collector; and further, as settling by a judicial determination that the railroad can not be held accountable for the county taxes of that year. The authorities relied on in support of this position

are *Hobson v. Conn*, 1 Duval, (Ky.) 172; *Ex parte Randolph,* 2 Brock. 447, 473-4-5. See, also, Burroughs on Taxation, 238, 241. The section of the statute invoked, is as follows:

"Sec. 120. That the auditor of State shall, from time to time, prescribe such forms and give such instructions as he may deem necessary to carry into effect the provisions of this act, and decide all questions which may arise as to the true construction of this act, or in relation to the duty of any officer under this act; and the instructions thus given shall be obeyed by, and the decisions thus made shall be binding upon all county and municipal officers."

We consider it unnecessary to decide how far decisions made by the auditor would be binding, and conclusive as judicial decrees, on questions therein embraced. All the provisions of the section copied, relate, in terms, to the revenue law approved December 31, 1868. The instructions of the auditor to the tax-collectors, not to collect county taxes levied on railroads and their rolling stock for 1869, were given, not under the revenue law of 1868, but under the attempted statute amendatory thereof, approved Feb. 9, 1870, which we have declared above never became a law. This was not a decision or instruction by the auditor, as to any matter arising under the revenue law of 1868, and hence, is not binding on the county officers. We think the railroad is liable to pay the county tax levied for the year 1869.

The only other question we consider it necessary to determine, arises on the averment of the bill of the Western Railroad Company against Chambers county, that the county tax of 1875 was levied in August of that year, when it should have been done in July, under section 93 of the revenue law of 1875. We hold this provision of the law to be directory, and that such levy made at the regular August term of the court, as this was done, is valid.—See Hilliard on Taxation, 299, *et seq.;* Burroughs on Taxation, 249; Cooley, do. 212, *et seq.*

The bill of the Savanah & Memphis Railroad Company against Chambers county, contains nothing material that is not disposed of above, unless it be some averments of irregularity in the attempt to force the collection of the taxes, which furnish no ground for a bill in equity.

We have not considered the question whether a bill would lie, even if the taxes levied by Chambers county were illegal.—See *Stone et al. v. Mayor, &c., of Mobile,* and *Mayor, &c., v. Baldwin,* 57 Ala. 61. Nor have we considered the question, whether relieving railroad companies from the payment of county taxes violates article 9 and section 4 of

[Perry County et als. v. Railroad Company et als.]

article 13 of the Constitution of 1868, or sections 1 and 6 of article 11, Constitution of 1875. These records do not render such inquiry necessary.

In the case of *Perry County v. Selma, Marion & Memphis Railroad Company*, the decree of the Chancellor is reversed, and the cause remanded, that the Chancellor may proceed to order the payment of the county taxes, levied for the year 1869.

In the case of the *Western Railroad Company v. Chambers County*, and *Savannah & Memphis Railroad Company v. Same*, the decrees of the Chancellor are affirmed.

MANNING, J., dissenting—upon the subject of a ·valid enactment of the act of Feb. 9th, 1870—is of opinion that, whether the bill was properly introduced into the Senate first, was a question to be determined by the legislature, and not by the courts.

ON PETITION FOR REHEARING IN THE CASE OF PERRY COUNTY V.
SAVANNAH, M. & M. R. R. CO.

STONE, J.—A petition for rehearing has been filed in this cause, on two grounds : First, it is contended that taxes can not be collected after the expiration of the tax year in which they are assessed, because, as it is alleged, the law has made no provision for such collection. In *Hibbard v. Clark*, 56 N. H. 155, a majority of the court held, that taxes levied and assessed are not a debt due from the tax-payer, which can be made a set-off under their statute. CUSHING, C. J., dissented. In *Finnegan v. City of Fernandina*, 15 Florida, 379,—a proceeding in equity—it was decided, "A court of equity will not devise a method to recover a debt, because of failure to recover it through the ordinary legal remedies." This had reference to unpaid taxes, resting on peculiar grounds, and materially influenced by the limited powers of the chancery court. It sheds no light whatever on the question we are discussing. The case of *Cobb v. Corporation of Elizabeth City*, 75 N. C. 1, was also a question of set-off, sought to be enforced in equity. The court said : "Debts owing by the town corporation, in whatever form they may be evidenced, can not be set-off against a demand for town taxes, unless there be a special contract to that effect." In Cooley on Taxation, 300, it is said, " that taxes are not debts in the ordinary acceptation of that term, and that the statutory measures are to be resorted to for their collection. Generally, no others are admissible. But the remedy by suit may be given by statute either directly or by implication.

If no specific remedy is expressly given, or only an imperfect or inadequate one, a presumption that a remedy by suit was intended is but reasonable." In the excellent work of Burroughs on Taxation, we find the following language : "No other objection has been urged to the recovery of taxes by action. A remedy is provided by statute for the enforcement of the tax by distress, and sale of goods of the taxpayer, and the rule of the common law is, that when a statute creates a right and provides a particular remedy, it is exclusive of all common law remedies. But this doctrine only applies to those to whom the statute is a rule of action. The king is not bound by a statute unless expressly named, and it is well settled that so much of the prerogatives of the king as constitute him *parens patriæ*, or universal trustee, vest, under our system of government, in the State, or body politic. The reason of this rule ceasing, in the case of the State or United States, the rule itself ceases, and either debt or assumpsit may be sustained for taxes. . . it would seem to be clear upon principle that an action may be maintained for taxes. . . Taxes are a political necessity. If the law raises a promise to pay, that one of its citizens may not obtain the services or goods of another without compensation, surely it will raise it that the State may exist. The tax is a personal charge against the citizen, notwithstanding a lien upon the property may be given by statute for its payment." See pages 253-4 ; Ib. 4. These principles are well justified by adjudged cases.—See *Savings Bank v. U. S.* 19 Wall, 227 ; *Meridith v. U. S.* 13 Pet. 486 ; *U. S. v. Lyman,* 1 Mas. Cir. Ct. 482 ; *City of Dubuque v. Ill. Cen. R. R. Co.* 39 Iowa, 56. In the case last cited, the doctrine was carried to a length not necessary to be followed in this case.

We think it may be affirmed as the result of the foregoing, and a large preponderance of authorities, that taxes levied and assessed become a legal liability on the tax-payer, that may be enforced by an action at common law, unless the statute gives a remedy that is, in its nature, exclusive. But it is probably enough in this case to maintain the proposition, that levy and assessment of taxes create a legal liability on the tax-payer to pay.

We have received another argument on the subject of collecting taxes that have been assessed, and not collected during the year of their assessment; and we confess ourselves much embarrassed by the present condition of our statutes. We think we may safely affirm that it has been the custom of tax collectors to collect taxes for previous years, which, for any reason, have escaped collection. We shall hereafter show there is warrant for this in the statutes. We think the

confusion and difficulty in which the subject we are discuss-
ing is involved, have grown out of amendments and altera-
tions of the revenue law, which have been made from time to
time, without observing and preserving the harmony of the
system, by other amendments, rendered necessary by those
made. This is not to be wondered at, considering our com-
prehensive and complex revenue system. In tracing the
history of our revenue legislation, as affecting this question,
we need not go behind the revenue law approved December
31, 1868, Pamph. Acts, 297. Sections 47–8–9 of that statute
direct when and how the tax collector shall meet the ·tax-
payers for the purpose of receiving their taxes, and what
opportunities he shall afford them to meet him and make
voluntary payment. Section 53 provides that the tax col-
lector, upon the mere assessment lists, and without other
process, may "levy upon any personal property of delinquent
tax-payers," and sell the same for the purpose of collecting
the taxes. A further clause of the same section provides
and directs that "it shall also be the duty of each tax col-
lector to ascertain, in his respective county, who are the
insolvent or defaulting tax-payers;" and it is then made the
·duty of the tax collector, "to ascertain who, if any person
or persons, are indebted to, or has in his or their possession,
or under their control, any money or effects, the property of
the said defaulting tax-payer, or insolvent tax-payer; and
this section, 53, then makes provision for garnishment in
such cases. What is the meaning of the clause, shall "ascer-
tain, in his county, who are the insolvent or defaulting tax-
payers?" Is it that he shall ascertain the defaulters of the
current year, or does it reach to and embrace defaults in
former years? If the former, the employment of the word
*ascertain* is strangely inapt. He has in his custody and keep-
ing all the tax-lists of that year. He knows whose taxes
have been paid, for they have been paid to him. Knowing
those who have paid, he knows, equally as well, who are the
defaulters. Ascertain, as here employed, means to find out.
He has nothing to find out as to delinquents of the current
year; for he knows all. And, in the very next clause of the ·
same sentence, it is made his duty to *ascertain* who, if any
person or persons, are indebted, &c. Ascertain, in this branch
of the section, certainly means *to find out*. There can be no
dispute of this. As a rule, a word twice employed in the
same sentence, or statute, is to be interpreted in the same
sense, unless the context shows it was intended to express a
different meaning. There is nothing in the context to show
that, in this sentence, the word ascertain was employed with
variant meaning.—See *Lehman, Durr & Co. v. Patrick Robin-*

*son*, present term. No officer is ever charged with the duty of ascertaining that which he already knows.

But sections 62 and 63 of the revenue law of 1868, demonstrate that the tax collector is charged with the duty of collecting delinquent taxes of preceding years. After advertisement, it is made his duty "to offer at public sale . . all lands, town lots, or other real property, on which taxes of any description for the *preceding year or years* shall have been delinquent, and remain due and unpaid." And these provisions have been preserved in every revenue law since that time.—See revenue law approved March 19, 1875, sections 48, 57, 58, Pamph. Acts, 3 ; revenue law approved March 6, 1876, ch. 6, § 9, and ch. 8, §§ 1, 2, Pamph. Acts, 42 ; Code of 1876, §§ 416, 438, 439. These provisions show what is meant by the word ascertain, and that the power of the collector is not limited to the year in which the assessment is made. Yet, there are no words in the statutes which direct in what manner the tax collector is to be informed of delinquencies in precedent years, unless it be found in the word ascertain, in section 416 of the Code of 1876. But it may be objected that section 438 of the Code of 1876, speaks of and relates to taxes for preceding years assessed on lands only. This is true, and, we must admit, presents a difficulty in the construction we are about to give. But there is a difficulty in any conceivable construction. We have seen above that the tax collector may, and must collect, even by sale if necessary, taxes for previous years assessed on lands. Hence, we can not hold that his power to collect is limited to assessments made for the tax year in which he is collecting. Can there be a reason for giving him power to collect past due taxes on lands, which does not apply with equal force to previous assessments of other subjects of taxation? We think not. The whole theory of our tax laws forbids the idea that delinquent tax-payers, by eluding the tax collector for a season, thereby exonerate themselves or their property from the payment of such taxes. It is the duty of the tax collector to ascertain who are the insolvent or defaulting tax-payers. No discrimination between defaults in paying taxes on lands, and on personalty. He must ascertain the insolvents and defaulters. For what purpose? That he may compel collection by garnishment.—Section 416. Then, that he may sell for taxes due for past years.—Section 438. We think the word *ascertain*, is without import, unless we construe it as enlarging inquiry beyond the tabulated books of assessment in the collector's hands. It is eminently proper and serviceable, if extended to defaults of previous years. Thus construed, this duty of the collector harmonizes completely

[Perry County et als. v. Railroad Company et als.]

with that other duty cast on him, of assessing the taxes of those who have escaped the tax assessor. The policy of the law is, that every one liable to assessment, shall contribute his proportion to the support of the government which protects him. The following sections of the Code of 1876 confirm, very materially, the views expressed above : sections 448, 466, 471. And, to show that these provisions have a general operation, with limited, specified exceptions, see section 478.

But let us inquire what absurd results would ensue from the opposite construction. A tax-payer, who has failed or neglected to have his taxes assessed, is liable to have them both assessed and collected, as escaped taxes, for any number of years afterwards.—Code of 1876, §§ 392, 413. While, on the other hand, the argument is, that if the tax-payer's property has been assessed, and his only default consists in not paying the assessment during the tax-year for which it was made, he is, by his own default or dereliction, entirely absolved from all payment. We do not think our statutes admit of such construction as this.

An argument has been made before us, based on section 421 of the Code of 1876, which is in the following language : "The tax collector, must report to the Court of County Commissioners at the April term in each year, on oath, a list of persons from whom he shall be unable to make the taxes, which shall be termed 'list of insolvents,' and also a list of such persons as have been overcharged by the assessor, which shall be termed 'list of errors in assessment,' and such court, after a rigid and searching examination of such lists and a proper correction of the same, shall credit the collector with the taxes due to the county thereon, and the probate judge shall certify such lists to the auditor, who shall allow the collector credit therefor, on his final settlement for the State taxes due thereon, and after such lists shall have been passed upon, and the credits given as herein required, the tax collector shall be, and is hereby prohibited thereafter from collecting any tax due upon any such insolvent lists." The section then provides that the judge of probate shall distribute such insolvent claims among the notaries or justices of the several beats for collection. The argument is, that after this return by the tax collector has been acted on by the Court of County Commissioners, the tax collector is prohibited from making collection of taxes previously assessed. The extract above is part of section 1 of the act "to amend section 15, chapter 6, of an act 'to establish a revenue code for the State of Alabama,' approved March 6, 1876."—Pamph. Acts, 16. This branch of our revenue system had its origin

in the revenue law approved March 19, 1875.—Pamph. Acts, 3. Section 50 of that act, directed that after the insolvent list was passed on by the Court of County Commissioners, the tax lists, so allowed as insolvent, should be, after certain notice posted up, sold in the several beats to which the said insolvent tax-payers belonged. Combination and fraud in its execution, caused a speedy change of this provision. Section 15, chapter 6, of the revenue law approved March 6, 1876, only differs from section 1 of the act approved February 9, 1877, in fixing a different and later time when notaries and justices of the peace in the several beats shall make settlement of insolvent tax lists turned over to them. The extract given above is common to, and identical in each of the statutes of 1876 and 1877. It will be observed that this only relates to the insolvent lists, reported by the tax collector, and passed on and allowed by the Court of County Commissioners. It is only this class, turned over to the notaries and justices of the peace, that the tax collector is prohibited from collecting thereafter. Any taxes of that or preceding years, not reported and allowed as insolvents, he is not prohibited from collecting, by this section.

We said above that our revenue system is involved in some confusion. The following sections of the Code of 1876, show to what we refer. Taxes become delinquent January 1st, next after assessment, if not sooner paid.—Section 361. After the 1st day of January, in each year, the tax collector must proceed, without delay, to levy upon any personal property of delinquent tax-payers.—Section 415. After the tax-collector has ascertained who are the insolvent and delinquent tax-payers—(this can not be of the current year taxes, until after January 1st, for it is only then they become delinquents), if he ascertains—finds out—that any person is indebted to or has effects belonging to the delinquent tax-payer, he must serve notice of garnishment on such person.—Section 416. On the first Monday of March, and on any day thereafter in each year, the tax collector may offer at public sale . . all lands, town lots, or other real property, on which taxes of any description for the preceding year or years shall remain due and unpaid.—Section 438. Garnishments are suits; and if the sum of delinquent taxes be over one hundred dollars, the process must be returnable to the Circuit or City Court. It is known that such suits may be pending for months before they are brought to a final trial. Yet all these varied proceedings must be crowded into a fraction over three months; for, under section 421, "the tax collector must report to the Court of County Commissioners at the April term in each year, on oath, a list of persons from whom he

shall be unable to make the taxes, which shall be termed 'list of insolvents.'" Failing to report to the April term, the law makes no provision for another or later report; and hence, all tax lists not reported insolvent to the April term, he remains charged with, and must account for as taxes collected. It would seem to be very improbable that a tax collector, no matter how vigilant, could make the process of garnishment available within that short time. And if he act on the prudent side, and report such claim insolvent, he thereby forfeits the right to collect such tax, under section 421; and the State and county lose the right to prosecute garnishment under section 416; for the statute makes no provision for any person, other than the tax collector, to issue or prosecute that suit.

In conclusion of this subject, which we have probably dwelt on at too great length, we hold that it is the duty of the tax collector to ascertain and collect taxes assessed for precedent years, which have become delinquent; and that this duty and right are limited by the acts of 1876 and 1877—now section 421 of the Code—only to the extent that he reports tax dues as insolvent, and they are so allowed by the Court of County Commissioners. These, as we have shown, he is prohibited from collecting.

The second ground urged for a rehearing in this cause is, that so far as the petition seeks to collect taxes for 1869, it is barred by the statute of limitations. It is a sufficient answer to this argument, in the present case, that the statute is neither pleaded, nor specified as a ground of demurrer.— 1 Brick. Dig. 699, § 859. But, inasmuch as this question may be raised when the case returns to the Chancery Court, it is probably better to consider and decide it now.

We concede that a county, suing or being sued, is not exempt from the operation of statutes of limitation, which cover the action sought to be enforced. They are not privileged from suit, under the principle, that 'time does not run against the sovereignty.' They are not the State.—See *Miller v. The State use,* 38 Ala. 600; *Kennehunkport v. Smith,* 9 Shep. (22 Me.) 445; *Armstrong v. Dalton,* 4 De. 568; *Lessees &c. v. First Pres. Ch.* 8 Ohio, 229. But we have no statute of limitations which covers this case.—See Art. 1, Ch. 20, Tit. 1, Part 3, Code of 1876, §§ 3223 to 3231. And section 392 of the Code goes very far to show that there was intended to be no bar against the liability to pay taxes, short of the twenty years presumption of payment.

It is also contended that the Court of County Commissioners of Perry, by settling with its tax collector, must be regarded as having remitted the taxes of 1869. It might be

[Mayor and Councilmen of Troy v. Coleman.]

sufficient answer to this objection to say, that the record no where shows that such settlement was made. We suppose the facts are, that the court, acquiescing for the time in the act of February 9, 1870, referred to above, and, in the construction given to it, did not require their tax collector to collect or account for the railroad tax due the county for 1869. We do not regard this as a surrender of the claim, or as any bar to its present operation.

On the single question of the tax levied for 1869, the decree of the Chancery Court is reversed, and the cause remanded for further proceedings in accordance with this opinion.