————o————

STATE OF MISSOURI, *ex rel.*, THE K. C., ST. J. & C. B. R. R. Co., Respondent, *vs.* JOHN SEVERANCE, *et al.*, Appellants.

1. *Statute—Repeal of by implication not favored—Question of repeal one of intent.*—A general affirmative statute will not repeal a former one which is special in its nature, unless negative words are used or the acts are so inconsistent, that they cannot stand together.

In such cases there is nothing but repeal by implication, and repeals in that manner are not favored. But the question is really one of intention, and where legislative intent is manifest it must prevail.

2. *Railroads, taxation of.—State Board of Equalization—Act of March 10th, 1871, applies to City of St. Joseph—Act constitutional—Taxation under, uniform.* —The proper intention and construction of the act of March 10th, 1871, providing a uniform system of assessing and collecting taxes on railroads (Sess. Acts 1871, p. 56), was that all railroad property in this State was to be assessed by the State Board of Equalization ; and that they were to ascertain the value of such property within the limits of any city, and transmit that amount as the proper assessment in favor of that city ; and that their action in this regard was exclusive of all other officers either State or municipal. Hence, the above act had the effect of repealing by implication the prior charter power of the City of St. Joseph to make the like assessment within the limits of that city.

Said act is not void as violating that provision of the State Constitution which declares that taxation on property shall be uniform. (State Const., Art. I, § 30.) Under that law there is no exemption and no inequality in the taxation. For any omission to assess property or for too low an assessment, the Board is amenable to the same supervision as other Boards performing similar duties.

3. *Railroads—Rolling stock of—Distribution for purposes of taxation—Act March 10th, 1871.*—The rolling stock of a railroad company, as a general principle, should be assessed and taxed where the corporation has its residence. But this principle of law may be modified by the legislature: And it was competent for the General Assembly, by the act of March 10th, 1871 (Sess. Acts 1871, p. 56) to say that for the purposes of taxation property of that description should be distributed through the counties, cities or towns through which the road passed, in proportion to its length in those respective localities.

4. *Railroads—Act of March 10th, 1871—Taxes how collected by cities, etc., from R. R. Companies.*—It is not an insuperable objection to the act of March 10th 1871, for taxation of railroads, (Sess. Acts 1871, p. 56) that it designates no particular mode by which cities and towns can collect the taxes from the railroads under the valuation made by the Board of Assessment. Where a statute creates a right and gives no remedy, the party may resort to the usual remedy applicable to such case.

*Appeal from Buchanan Common Pleas.*

*Chandler & Sherman,* for Appellants.

I. The Act approved March 10th, 1871, is unconstitutional. (See Art. XI, § 16 ;. Art. I, § 30, Const. of Mo.)

This rule subjecting property to taxation in proportion to its value is imperative. (Life As. Am. vs. B. of As., 49 Mo., 517.)

II. Uniformity, which implies equality, in the burden of taxation, constitutes the very substance designed to be secured by the rule, and a palpable departure from equality in the burden imposed is plainly within the constitutional prohibition. (Life As. vs. B. of As., 49 Mo., 517 ; Bank vs. Hines, 3 Ohio St., 15 ; Weeks vs. Milwaukee, 10 Wis., 256 ;. Covington vs. Southgate, 15 B. Mon., 498–500; Morford vs. Unger, 8 Iowa, 92.)

III. To the end that taxation, where this rule is in force, may be equal and uniform, there must be some system of apportionment ; which apportionment must be applied to all property within the taxing districts with absolute uniformity. A city tax, for example, must be apportioned and levied with absolute uniformity upon the taxable property within its limits, and with reference to a uniform standand: (Cooley on Const. Lim., pp. 495–515 ; 2 Kent's Com., 231 ; Weeks vs. Milwaukee, 10 Wis., 256 ; Bank vs. Hines, 3 Ohio St., 15 *et*

*seq.*) To render taxation uniform in any case two things are essential : 1st. The taxing district should confine itself to objects of taxation within its limits. 2nd. The apportionment of taxes should reach all objects of taxation within the taxing district ; in other words, in levying taxes, the valuation of property must be uniform and the rate uniform, so that the burden will fall alike upon all taxable property throughout the territorial limits of the state or municipality within or for which the tax is to be raised. (Cooley on Const. Lim., pp. 499–503 ; Wells vs. Weston, 22 Mo., 385 ; Gilman vs. Sheboygan, 2 Black, [U. S.], 510 ; Wooldridge vs. Detroit, 8 Mich., 301; Knowlton vs. Supervisors, 9 Wis., 410–421 ; Weeks vs. Milwaukee, 10 Wis., 242, 282; Mygatt vs. Washburn, 15 N. Y., 316 ; Exchange Bank vs. Hines, 3 Ohio St., 1; Merrick vs. Amherst, 12 Allen, 504; People vs. Brooklyn, 4 N. Y., 419 ; Attorney General vs. W. L. & F. R. Pl'k R'd Co., 11 Wis. 42 ; Zanesville vs. Auditor of Muskingum Co., 5 Ohio St., 592.) Considered and judged in the light of the foregoing principles, the said act of March 10th, 1871, as the relator construes its provisions, is null and void.

Though the "Act to provide for a uniform system of assessing and collecting taxes on railroads," approved March 10th, 1871, should be decided to be constitutional, yet it does not repeal, alter or modify the charter of St. Joseph.

1st. The said act of March 10th, 1871, is a general act, while the city charter and the several amendments thereof are local and special acts. (Sess. Laws 1871, p. 56; Laws and Ordinances of St. Joseph, p. 43, § 3, and p. 7, § 1.) Statutes of a general nature do not repeal, by implication, the charters and special acts enacted for the benefit of particular municipalities unless such appears to have been the intent of the legislature. When the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute, treating the subject in a general manner and not expressly contradicting the previous act, shall not be considered as intended to affect the more particular previous act, unless it is absolutely necessary to give the latter act such a construc-

tion in order that its words shall have any meaning at all. (Dill. Mun. Corp., §§ 54, 611, 612; Sedg. Stat. and Const. Law, 123–4; Mayor of Troy vs. Mutual Bank, 20 N. Y., 387, 388; Williams vs. Pritchard, 4 D. & E., 2; Langdon vs. Fire Depart., 17 Wend., 234; Furman vs. Knapp, 19 Johns, 248; R. R. Company vs. Alexandria, 17 Grattan [Va.], 176.)

The legislature did not intend that the said act of March 10th, 1871, should repeal, alter or modify the charter of St. Joseph, because:

1. The city charter provides that the Mayor and Council "shall have power to levy and collect from railroad corporations, upon the value of their property, both real and personal, within the limits of the said city, the same taxes for municipal purposes that are levied and collected upon the real and personal property of the citizens of said city." (Sess. Acts 1864, p. 430, § 3; Laws & Ordinances of St. Joseph, p. 42, § 3.) 2. The charter also provides a method by which delinquent taxes, assessed against real estate within the city, may be collected. (Sess. Acts 1864, p. 433, § 3 to 17; Laws and Ordinances of St. Joseph, p. 30, § 3 to 17.) 3. The aforesaid act of March 10th, 1871, provides no method by which the municipal authorities may enforce the payment of city taxes upon any assessment·made under the provisions of said act, and therefore the city must conform to the mode of procedure prescribed in the charter, or it is powerless to collect its taxes assessed against the real estate of those who fail or refuse to pay them. (Blackwell on Tax Titles, 447; Stetson vs. Kempton, 13 Mass., 272; Dillingham vs. Swan, 5 Mass., 547; Williamsport vs. Kent, 14 Ind., 306.)

But the method provided by the city charter cannot be applied to any assessment made under the provisions of this act. The assessment apportioned to the city by the "special board" created by said act, includes in one sum the valuation of relator's real and personal property subjected by said act to taxation by the city. The method prescribed by the city charter for collecting delinquent taxes assessed against real estate cannot be applied to the collection of delinquent taxes assessed

against personal property. By this method, too, each piece or parcel of real estate is proceeded against for the taxes chargeable against it. And if the method of collecting delinquent taxes assessed against personal property be by distraint, as the relator contends, the municipal authorities cannot know or be informed of the proportion of the aggregate amount apportioned to the city which is properly chargeable against the relator's personalty. The city has no power to enforce against the relators' real estate the taxes chargeable against its personalty. (State to use of Rice vs. Powell, 44 Mo., 436.) Nor can the city enforce against the relator's personal estate the taxes chargeable against its realty, for such a procedure is not authorized, but rather prohibited, by the city charter.

Hence, we argue that the legislature did not intend that said act of March 10th, 1871, should operate to repeal, alter or modify the city charter by imposing upon St. Joseph an impracticable system of assessing property for purposes of taxation.

Though said act of March 10th, 1871, was passed subsequently to the enactment of the city charter, yet the former is a general and affirmative act and does not abrogate the charter, which is a particular and local act, unless negative words are used or unless the acts are irreconcilably inconsistent. Said general act and that portion of the city charter relating to the assessment and collection of city taxes, being *in pari materia*, must be taken and construed together and made to stand if they can be reconciled. As there may be a general prohibition, with indulgence to particular individuals, so also there may be a general system of procedure with special local exemptions or exceptions. (Sedg. on Stat. and Const. Law, pp. 123–4; Potter's Dwarris, 514, 532–3; State, *ex rel.* M. & M. R. R. Co. vs. Co. Court, 41 Mo., 459; St. Louis vs. Alexander, 23 Mo., 483; Deters vs. Renick, 37 Mo., 597; Brown vs. County Commissioners, 21 Penn., 37; Mayor of Troy vs. Mutual Bank, 20 N. Y., 387; Hume vs. Gossett, 43 Ill., 297; Daviess vs. Fairburn, 3 How., [U. S.] 636.)

*Stringfellow, Hall & Oliver,* for Respondent.

I. The act of March 10th, 1871, applies to cities and incorporated towns, and provides for the assessment of railroad property within their limits. This is not only the plain meaning of the law, but it is the construction which has been given to it by the officers whose duty it is, to administer it and by all the cities and incorporated towns in Missouri through which railroads pass, except the city of St. Joseph. (State vs. Pearcy, 44 Mo., 160; 16 Iowa, 353; 3 Bush. Ky., 650; 13 Wall., 270; 12 Iowa, 534, 539; Sess. Acts 1871, pp. 56, 57, 58, 59, §§ 1, 4, 8; Sess. Acts 1873, pp. 63, 64, 65, 66, 67, 68, §§ 1, 2, 8, 13, 18.)

II. The fact that said act does not provide a specific mode of collecting taxes against railroad companies by cities and towns makes no difference. Cities and towns can avail themselves in such cases of the provisions of their charter if applicable, and if the provisions of their charter are not applicable they may sue for the taxes. (Carondelet vs. Picot, 38 Mo., 130.)

III. The act of March 10, 1871, is constitutional. Said act requires all property to be taxed according to its actual value in cash. And this is all that our constitution requires. (Sess. Acts of March 10, 1871, p. 56, § 2; Const. Mo., Art. I, § 30.) The Constitution of Missouri does not require the same individual to assess all property. The act of 1871 adopts a just and fair mode of appraising railroads for taxation. (27 Ills., 64; 25 Ind., 178; 16 Iowa, 353; 3 Bush. [Ky.], 650.)

WAGNER, Judge, delivered the opinion of the court.

The main questions in this case are whether the act approved March 10, 1871, (Sess. Acts 1871, p. 56,) entitled "an act to provide for a uniform system of assessing and collecting taxes on railroads" applies to the city of St. Joseph, and whether it is a valid and constitutional law?

After the board of equalization provided for in said act had made their assessment on the property of the relator, and apportioned the amount on the same within the limits of the

city, and duly certified their return, the city authorities proceeded to make a new and additional assessment greatly increasing the amount, claiming that they were not bound by the assessment made by the state board, and that the act in question had no application to the city.

The relator, after appealing unsuccessfully to the city court of revision and appeals, obtained a writ of mandamus to compel the city authorities to change the city assessment to the amount assessed by the state board of equalization.

Upon the hearing of the cause the writ was made absolute, and the defendants appealed.

At the threshold of this case we are met with the objection that the plaintiff has misconceived its remedy, and that mandamus will not lie. But as the matters in issue have been regularly passed upon, and they have been brought here, we think it will be more consonant to justice, to examine the case and put it at rest than to turn the party out of court for such a reason, although we might be of the opinion that the defendant's counsel were correct in their position.

The first section of the act of 1871 provides that all railroads now constructed, in course of construction, or which shall hereafter be constructed in this state, and all other property, real, personal or mixed, owned by any railroad company or corporation in this state, shall be subject to taxation, for state, county and other municipal or local purposes, to the extent and in the manner thereinafter set forth.

Section 2 provides, that on or before the first day of February in each and every year, the president or other chief officer of every railroad company whose road is now, or which shall hereafter become so far complete and in operation as to run locomotive engines, with freight or passenger cars thereon, shall furnish to the state auditor a statement duly subscribed and sworn to by said president or other chief officer, before some officer authorized to administer oaths, setting out in detail all the property of said company, including the roadbed, buildings, machinery, engines, cars, lands, workshops, depot and all other property of whatsoever kind, with the loca-

tion thereof, and the actual value thereof, in each county, in cash.

By section 4, in addition to the statement required by the preceding section, it is made the duty of the president or other chief officer, on or before the first day of February, in each and every year, to furnish the state auditor with a statement duly subscribed and sworn to, setting out the length of such road that may be so far complete and in operation as to run locomotive engines, with freight or passenger cars thereon, and the number of miles in length of such road in each county, city or incorporated town in which said road may be located.

By section 5 the state auditor, state treasurer and the register of lands are constituted a special board of equalization of railroad property, with all the powers, and entitled to discharge the same duties with reference to railroad property as the state board of equalization with reference to all other property.

Section 6 requires the board to meet at the office of the state auditor on the first Monday in May in each and every year; when the state auditor is commanded to lay before the board all the returns which have been made to him in compliance with the law.

By section 7 it is provided as follows: "The board shall thereupon proceed to adjust and equalize the aggregate valuation of the property of each one of the railroad companies liable to taxation under the foregoing sections of this act. The board shall have power to summon witnesses by process issued to any officer authorized to serve subpœnas, and shall have the powers of a circuit court to compel the attendance of such witnesses and compel them to testify. They shall have power to increase or reduce the aggregate valuation of the property of any railroad company in accordance with the evidence produced before them, and as they may deem just and right. If the said board should deem personal inspection of the property of any railroad company necessary to a thorough understanding of its value and a just decision, they shall

have power to visit such road, and may adjourn from time to time for that purpose."

Section 8 declares : "The board shall apportion the value of all lands, work-shops, depots and other buildings belonging to each railroad company to the counties, cities or incorporated towns in which such lands, work-shops, depots and other buildings are situate, and the aggregate value of all other property of each railroad company shall be apportioned to each county, city or incorporated town in which such road shall be located, according to the ratio which the number of miles of road completed in such county shall bear to the whole length of such railroad."

It is now contended that this law, general in its character, does not apply to the City of St. Joseph, whose charter, passed prior thereto, gave it express power to tax the property of railroad companies within the corporate limits. There is no question concerning the now generally admitted rule, that a general affirmative statute will not repeal a former one, which is special or particular in its nature, unless negative words are used, or the acts be so entirely inconsistent that they cannot stand together. In such cases there is nothing but an implication of repeal, and repeals in that manner are not favored. But it is really a question of intention, and where the legislative intent is manifest or apparent it must prevail. The statute says, that all railroads now constructed, in course of construction, or which shall hereafter be constructed, and all other property, real, personal or mixed, owned by any railroad company or corporation, shall be subject to taxation for State, county, or other municipal or local purposes. A board of equalization is then organized with full and complete power to assess the roads and all their property. Not only does the board complete and ascertain the value in their assessment, but it is made their duty when the assessment is arrived at, to apportion the value of all lands, work-shops, depots and other buildings belonging to each railroad company to the counties, cities or incorporated towns in which such property is situate. If it were intended that the cities and towns should still have the privi-

lege and power of again assessing the property under their municipal ordinances, for what purpose was the law enacted? The provision apportioning the lands, work-shops, depots and other buildings to the municipalities, under such a construction, would be a mere nullity and amount to nothing more than unmeaning verbiage. We must suppose, that the legislature meant something, and that they intended what they said, and that therefore all the property was to be assessed by the board, and that they were to ascertain the value within the limits of any city, and transmit that amount as the proper assessment in favor of the city, and that their action in this regard was exclusive of all other officers, either State or municipal. This construction is obvious, else the act has no efficacy.

It is further insisted with great zeal, in an able and eloquent argument, that the act is void, because it violates that provision of our constitution which declares that taxation on property shall be uniform. We are unable to perceive the force of this objection. Under the act no part of the company's property is exempt, and it is all taxed alike upon a cash valuation. The board of equalization assess all the property at its cash value, and then it is taxed in the same manner as all other property of a like description. The principle of uniformity is adopted throughout. Its validity is in no wise impaired or affected because a different mode of assessment is provided for, so long as the same end is attained. It is not an absolute or indispensable requisite that the county or corporation assessor should make the assessment. That duty may be devolved on any other officer or officers, if uniformity is accomplished and preserved.

There is no attempt here to tax one section for the benefit of another, nor is any real inequality produced. The board apportions and sets off the value of all real estate to the counties, cities or incorporated towns in which it is situated, and they collect what is due to them upon the same. Thus there is no exemption and no inequality. Should the board omit to assess any property or place too low an estimate upon it, the

proper proceedings should be taken by those interested to have the error or mistake rectified. The board has the power of a court of appeals for the purposes for which they are organized, and may take testimony, summon witnesses, raise or diminish the value of the property as in their judgment may be right to make a just, fair and uniform assessment. As such board they are amenable to the same supervision as other boards performing similar duties.

But the point is strongly pressed that the law is objectionable because aside from the real estate it provides that the aggregate value of all other property of each company shall be apportioned to each city, county or incorporated town in which such road shall be located, according to the ratio which the number of miles of such road completed in such county shall bear the whole length of such railroad. So far as the actual road-bed is concerned, it is not questioned that this is a sufficiently uniform and just manner of making the taxes. But it is argued with great earnestness, that in the phrase "all other property," is included the rolling stock of the railroad, and that, the company having its chief offices for the transaction of its business in the city of St. Joseph, there and there alone this property should be assessed and made liable for taxes; that though constantly used in other counties through which the road passes, in the transaction of the business of the road, still its only *situs* is where the chief office is located, and there it must be taxed.

The proposition is undoubtedly true, that where a corporation has its residence, there the property of this description is liable to assessment and taxation, if the law has prescribed no different rule or regulation on the subject. This notion of the *situs* of personal property following the personal residence of the corporation, is a legal fiction, but is not an unbending and uncontrollable principle of law. It may be modified by the legislature. The rolling stock of a company is in a constant state of transition, and has no more real local existence in one county than another. A county through whose whole length it runs might well think that it had as much right to tax it as

a city that it passed through but for a mile or two at most ; but both would have no right to levy a tax, for that would be double taxation upon the same property.

This machinery, by which the road is operated, is constantly passing from one terminus to the other of the entire road, and to save all cavil and dispute in respect to it, it was perfectly competent for 'the legislature to say that it should become a part of the road itself, and become property the same as the road, and that for the purposes of taxation it should be equally distributed through the counties, cities or towns through which it passed, in proportion to its length in those respective localities.

It is, however, said, that the act of the legislature designates no particular mode by which cities and towns can collect the taxes from the company under the valuation made by the board of assessment. But this is not an insuperable objection. The well known rule is, that where a statute creates a right and gives no remedy, the party may resort to the usual remedy applicable to such a case. (Carondelet vs. Picot, 38 Mo., 130 ; Dudley vs. Mayhew, 3 Comst., 9 ; Almy vs. Harris 5 Johns., 175.)

I think the judgment should be affirmed. The other judges concur.