DILLINGER *et al.*, *Appellants*, **v.** KELLEY *et al.*

1. **Administrator,** PURCHASE BY OF REALTY OF INTESTATE. An administrator can become the purchaser of lands of his intestate sold under the foreclosure of a mortgage in the circuit court. Revised Statutes, section 166, prohibiting an executor, or administrator, from purchasing the real estate of the estate, has reference only to probate court sales.

2. **Tenants in Common:** PURCHASE BY ONE OF OUTSTANDING TITLE. One tenant in common cannot purchase an outstanding adverse title for his own benefit. Such purchase will inure to the benefit of all those interested in the common estate, they, however, bearing their proportionate share of the cost and expense of the purchase.

3. **Suit Prematurely Brought,** JUDGMENT IN NOT A BAR. Where a suit is prematurely brought a judgment therein is no bar to a second suit after the cause of action matures.

*Appeal from Clark Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*Whiteside* and *Givens & Meryhew* for appellants.

(1) An executor, administrator, or trustee, cannot purchase real estate belonging to the estate of his *cestui que trust*, either at public or private sale. R. S., p. 25, sec. 166; *Grumley v. Webb*, 44 Mo. 444; *Roberts v. Mosely*, 64 Mo. 507; *Thornton v. Irwin*, 43 Mo. 153; *Harper et al. v. Mansfield et al.*, 58 Mo. 17; *Ryden v. Jones*, 9th American Decisions, 660; 4 Kent (9 Ed.) pp. 502 and 414; 1 Story's Equity Jurisprudence (12 Ed.) pp. 313 to 317, secs. 321 and 322. (2) The *cestui que trust* is not bound to prove, nor is the court bound to decide that the executor or trustee has made a bargain advantageous to himself, in order to set aside the sale. The rule that a trustee, or executor cannot purchase the

trust property, is one of public policy independent of questions of fraud, and the trustee, or executor, cannot become the purchaser, even though the sale was at public auction, *bona fide*, and for a fair price. *Thornton v. Irwin,* 43 Mo. 153 ; 1 Story's Equity Jurisprudence (12 Ed.) p. 315, sec. 322; *Grumley v. Webb,* 44 Mo. 444 ; *Webb v. Dietrich,* 7 W. & S. 401 ; *Rea et al. v. Copelin,* 47 Mo. 76. (3) A trustee, or executor, cannot purchase, even when the land is sold at a judicial sale. 64 Mo. 507. A preponderance of the evidence shows that there was a positive agreement between plaintiffs and Kelley, the executor, that he (Kelley) would buy the land for the heirs. (4) Defendants and plaintiff, Margaret, being joint tenants, the purchase by defendants inured to the advantage of plaintiff, Margaret, a joint owner. *Picot v. Page,* 26 Mo. 398; *Rea et al. v. Copelin,* 47 Mo. 76 ; *Weare v. Van Meter,* 20 American Reports, 616 ; *Fallon v. Chidester,* 26 American Reports, 164; *Sneed's Heirs et al. v. Atherton,* 32 American decisions, 70.

*Berkheimer & Matlock* for respondents.

(1) Plaintiffs have no standing in a court of equity, as Daws Kelley was the administrator, and as such could purchase the land in a mortgage foreclosure sale and hold as against the heir. 2 Sugden on Vendors, p. 405, note *n* ; *Blood v. Haymen,* 13 Met. p. 231 ; *Johns v. Norris,* 7 C. E. Green (N. J.) p. 102 ; *Lorzems v. Bryson,* 3 Binn. 59 ; *Ward v. Smith,* 3 Sandf. 592. (2) An administrator is not a trustee of the real estate of his intestate, for the heir, and as against the heir ; he may purchase for himself, at a judicial sale, in foreclosure of a mortgage. See cases cited *supra*. (3) The administrator has nothing to do with the real estate, but it descends directly to the heir, except on an inchoate right to sell for the payment of debts. *Auberdien v. Long,* 23 Mo. 99 ; *Chambers v. Wright,* 40 Mo. 482. Such being the case, the administrator primarily representing the creditors of the estate,

his interest, instead of being the interest of a trustee, is directly antagonistic to the heirs. In all of the cases cited by appellants, where the administrator became the purchaser, there was actual fraud proven, as it was at their own sale, under the orders of the probate court, or it was the sale of a trustee, pure and simple, which is not the case at bar. In the absence of actual fraud, a purchase by an administrator at a sale by him will not be set aside by the heirs or devisees without repayment by them of the money advanced by the administrator. 2 Sugden on Vendors (14 Ed.) 420; *Yeacle v. Litchfield*, 13 Allen 417; *Harrington v. Brown*, 5 Pick. 521; *Pratt v. Thornton*, 38 Me. 355; *Roberts v. Moseley*, 64 Mo. 507. The plaintiffs and defendants are tenants in common, and the payment of the Keith judgment, and allowed claims against the estate, inured to the benefit of all. *Pricket v. Page*, 26 Mo. 398; *Rector v. Waugh*, 17 Mo. 14; 1 Washburn on Real Property, 588.

SHERWOOD, J.—Isaac Kelley owned about one hundred and eighty acres of land, about sixty-five acres being in cultivation in Clark county, Missouri, which tract was incumbered by a debt secured by mortgage held by Benj. Keith. Kelley made a will, whereby he so devised his farm that his son, Milton, was to have the use of it, and to keep the wife of the testator, and the mother of Milton, during her natural life; to pay the taxes, also the interest due on the Keith mortgage, and keep up all necessary repairs on the farm, and after the death of the widow, the mortgage was to be satisfied, and the residue of the land was to be divided between the ten children of the testator, share and share alike. After the testator died the will was admitted to probate, and no executor having been appointed by the will, Daws Kelley administered, taking out the letters *cum testamento annexo*. The mortgage debt becoming due, Keith foreclosed in 1880, and at a public sale at which Milton Kelley, Daws Kelley, administrator, and Franklin

Kelley, the sons of the testator, became the purchasers, being the highest bidders. It seems that Milton Kelley did not take possession of the land under the will, but kept possession, and worked the land for his mother, who was alive at the time this cause was heard. The land at the foreclosure sale brought eight hundred and fifty dollars, and after satisfying the mortgage debt, there was sufficient left to pay off several hundred dollars of claims allowed against the testator's estate, and still leave a small balance in the hands of the administrator for the use of his mother. In 1881, the administrator made final settlement of the estate.

Margaret Dillinger, the daughter of the testator, and her husband, Jacob, instituted this proceeding, charging fraud in the foreclosure sale ; in the administration of the estate ; that the administrator was a trustee and could not buy at such sale, and that Margaret was a tenant in common with defendants, and, therefore, they could not buy the land to her prejudice. For these reasons the plaintiffs prayed that the sale might be set aside, and the interest of Margaret decreed to her under the provisions of the will, and for general relief. As to the fraud charged, I have discovered not a trace of it in the record. The land was poor post-oak, brush land, so poor that Milton, the son, could not afford to keep the farm in repair, pay the taxes and keep down the interest on the Keith mortgage. This being the situation I will consider the effect of the administrator's joining with his brother in buying in the farm at the foreclosure sale.

I. At the time this sale occurred, the provisions of section 166, Revised Statutes, 1879, relied on by plaintiffs, were in full force. This section, which prohibits an administrator from purchasing the land of his testator, or intestate, has no sort of reference to sales other than *probate sales*. The question, then, arises, is there any law which forbids an administrator from buying the land of his intestate, when sold by the process of the

circuit court? I see nothing in the way of the validity of such a purchase. With the real estate of his decedent the administrator has no concern or power of disposition; has no duty to perform, except in leasing the land, under the direction of the probate court; the power to recover the rents, and the possession of the land thus leased (Revised Statutes, 1879, section 129 ); and has, under the order of that court, the naked power to sell the land for the payment of debts. R. S. 1879, sec. 149; *Aubuchon v. Lory*, 23 Mo. 99; *Chambers v. Wright*, 40 Mo. 482. Viewing the matter from this standpoint, and the attitude and relations of an administrator toward the land of his intestate, outside of the pathway of his powers and his duty, would seem to be that of a mere stranger; for it is only where power and duty, the constituent elements of a trust, towards a specific subject matter are conferred, that fiduciary character begins. In the matter of the foreclosure sale, Daws Kelley, as administrator, had, in that capacity, neither power to exert, nor duty to perform. I prove this by asking this question, which suggests at once its own negative answer: Suppose the administrator had not attended the foreclosure sale, or purchased the land sold thereat, would that have rendered him liable on his bond, as and for a breach of that bond? If it would not, then it stands to reason that, having no duty to perform regarding that land, which required his presence at the sale, that when he went there and bought the land, he did so on the footing of the merest stranger, free to buy, or free to forbear.

The case of *Johns v. Norris*, 7 C. E. Greene (N. J. Eq.) 102, is directly in point in favor of this position. There the administrator bought the land of his intestate under a foreclosure sale, and upon bill brought to have the purchase by the administrator declared to have been in trust for the complainants, it was held there was nothing objectionable in the purchase, Chancellor Zabriskie, observing in regard to the matter: "It is claimed

that Noah Norris, as administrator, was trustee for the
heirs and creditors, and, therefore, had no right to pur-
chase any of the estate for himself, and that the other
defendants had notice of this fact. Noah Norris, as
administrator, was a trustee of the *personal estate* for
the creditors and next of kin. He had no power over
the *real estate*, nor trust as to it. He could only meddle
with that by an order of the Orphan's court that he
should sell it. * * * Norris was in no sense a trustee
for Theresa as to her 'father's real estate. And she can
have no remedy against him, or his vendees, founded on
such supposed trust." And thereupon the bill was dis-
missed. This is the only case, out of a large number
examined, which directly rules the point now under
discussion. The case of *Harper v. Mansfield*, 58 Mo. 17,
cited for plaintiffs, was a case of rank fraud, where the
administrator of the mortgageor had prompted and pro-
cured the sale under the deed of trust to be made at an
unusual hour, in the absence of the trustee, by an auc-
tioneer, and had bought in the land at a sacrifice, so
that that case, though correctly decided, went too far,
and the loose and broad observations made therein,
should not be extended to cases where fraud does not
appear. In Maryland, a ruling similar to the one made
in New Jersey was made in reference to the adminis-
trator of one who had sold a house and lot, and received
a portion of the purchase money, and the adminis-
trator brought suit for the residue, obtained judgment,
had the land sold thereunder by the sheriff, and bid in
the land for himself, and no fraud appearing, it was held
the sale was valid, and that there was no impropriety in
the action of the administrator in so doing. Brent, J.,
delivering the opinion of the court, said: "Although
Wilson happened to be the administrator of Bunnell, he
is not to be regarded as a purchaser in his represetative
capacity. He had an undoubted right to become the
purchaser, and as such, so far as this record discloses, is
entitled to as much protection, under the law, as if he

were a stranger to all the parties. The courts go very far in favoring and maintaining the titles of purchasers under judicial sales, and there is no part of the law upon which the adjudications have been more uniform and conclusive." *Wilson v. Miller*, 30 Md. 82.

In Alabama, if the administrator has *an interest in the estate*, the rule is well established that he may become the purchaser at his own sale, provided the sale be fairly conducted. *Frazer's Ex'rs v. Lee*, 42 Ala. 25. The general rule, however, undoubtedly is, as attested by an almost infinite number of authorities, that an administrator, except when permitted by statute, purchasing either directly, or indirectly, at his own sale, a sale of which he has the management, and over which he has the sole control, is to be regarded *pro hac vice*, as a trustee, and subject to all those wise restrictions which pertain to those who take upon themselves the disabilities incident to such confidential relations. Consequently, an administrator, who, for instance, purchases at such sale, *per interpositam personam*, is held as a trustee regarding that transaction, and if timely application be made by those interested, a court of equity will declare him a trustee, and that he holds the land in that capacity. But the distinction between the case of an administrator buying at his own sale, and the present case, is most obvious. In the former he would occupy the antagonistic attitudes of buyer and seller, while in the latter, he would occupy no "coign of vantage" in any particular whatsoever, but would meet other bidders in open and fair competition in a public sale, where only the highest bid could secure the land sold.

The very definition of the word "*trustee*" sustains the position here taken. What is that definition? It is this: "A person in whom some estate, interest or power in or affecting property of any description, is vested for the benefit of another." Of course, then, when you find a person situated, as is an administrator, with no control

over the realty except in a certain instance, as when acting under a naked power to sell that realty, you must conclude, and reason and authority bear you out in the conclusion, that when acting outside of those particular circumstances, specifically enumerated by the statute itself, he is not a trustee because of not possessing any of the powers, or required to perform any of those duties which enter into the definition of trusteeship. In a word, outside of his statutory duties and powers, he is placed in no situation where duty and self-interest coalesce, an antagonistic attitude which the sound and preventive policy of courts of equity forbids him to assume. For these reasons the action of the circuit court in refusing to set aside the sale was correct.

II. There is only one point remaining yet for discussion; it is this: By the terms of the will of Isaac Kelly, his ten children were to become, upon the death of their mother, tenants in common of the land devised. R. S. 1879, sec. 3949. Inasmuch as the mother was alive when this cause was heard, it was out of the power of the trial court to respond to the prayer of the petition and decree to Margaret her interest in the land. That interest she can only obtain upon the decease of her mother. But there is nothing in the purchase at the foreclosure sale by the brothers of Margaret which will debar her from ultimately obtaining her proportionate interest. She being a tenant in common with her brothers, whatever purchase they made or expenses they incurred in and about the land, would inure to the benefit of all those whose interests were in common with their own. It is a rule in equity that one standing in the relation of tenant in common, joint tenant, joint devisee, etc., cannot purchase an outstanding adverse title for his own benefit, but such title will inure to the benefit of all those interested with him, but they must of course bear their proportionate share of the cost and expense. *Picot v. Page*, 26 Mo. 398, and cases cited. When the death of the mother shall occur, then

Margaret, if she desires to do so, may take such steps as she may be advised in order to obtain her proportionate share of the land devised to her; but she can only do this by reimbursing her brothers to the extent of her proper amount of the money expended, thus affording illustration of the maxim that "he who seeks equity must do equity." *Whelan v. Reilly*, 61 Mo. 565, and cases cited; *Dwen v. Blake*, 44 Ill. 135; 1 Pomeroy's Eq. Jur., sec. 385, *et seq.*

I am not of opinion that the judgment rendered against her by the trial court will, or ought to preclude her from obtaining the relief mentioned, when the death of the mother takes place. Under the terms of the will, her suit was prematurely brought so far as obtaining her proportionate share of the land was concerned, and when a suit is thus brought before its time, a judgment in the first action is no bar to a second suit, after the cause of action matures. *Macfarlane v. Cushman*, 21 Wis. 406; *Bull v. Hopkins*, 7 Johns. 22; *Gray v. Dougherty*, 25 Cal. 266; *Quackenbrush v. Ehle*, 5 Barb. 469; *University v. Maultsby*, 2 Jones Eq. 241; Bigelow on Estop., 32 N.; 1 Greenl. Evid., sec. 530; *Woodbridge v. Banning*, 14 Ohio St. 328.

With the understanding then that the affirmance of the judgment will not prejudice the future assertion of her rights, and upon the condition aforesaid, we affirm the judgment. All concur.