## Davis and others v. McGee and others.

*(Circuit Court, E. D. Missouri.* September 30, 1886.)

TAXES—SALE—IMPROPER ASSESSMENT—INADEQUATE PRICE.

Under the Missouri statutes, an improper assessment of a piece of land as several tracts, instead of one, and the sale of the land for an inadequate price under a judgment for the taxes assessed against it, will not invalidate the sale. [2]

In Equity. Demurrer to bill.
*Ford & Payne,* for complainants.
*Dryden & Dryden,* for defendants.

BREWER, J., (*orally.*) There is a demurrer to the bill in this case, which is a bill to redeem from certain judicial sales for taxes, and I shall treat it as containing fully the allegations which counsel for complainants insist were intended to be incorporated in it, and which correctly state the facts of the case, rather than rest my decision upon some technical matters suggested by counsel for the defendants.

The complainants are the heirs of Matthew Davis, who died in 1873, owning a tract of 280 acres of farming land, in one body. Thereafter the property was assessed in the name of the unknown heirs of Matthew Davis, and as separate tracts of 40 acres. In 1876 a suit in partition was brought in the circuit court of the county by some of those heirs against others, which suit hung in that court until

---

[1] Edited by Benj. F. Rex, Esq., of the St. Louis bar.

[2] As to setting aside judicial and *quasi* judicial sales for inadequacy of price, see Weaver v. Lyon, (Pa.) 5 Atl. Rep. 782, and note; Central Pac. Ry. Co. v. Creed, (Cal.) 11 Pac. Rep. 772; Fitzgerald v. Kelso, (Iowa,) 29 N. W. Rep. 943.

1881, when it was dismissed without any trial. One of the heirs was and is a lunatic, and all are non-resident. In 1879, suit was brought, under the provisions of your statute, in the circuit court of the county, to collect these taxes, which resulted in a decree, and a sale on March 6, 1880, of 200 acres—five tracts—for $225.60. In January, 1882, another suit was brought, which resulted in a sale, September 8, 1882, of the other tracts, for $480. In other words, the proceeds of the sale were $705.60; the land being then and now, as averred, worth $12 an acre, or $3,360.60. These provisions for judicial sale authorize proceedings in the circuit courts,—courts of general jurisdiction,—and the same rules obtain as to proceedings in those courts for the collection of taxes as for the collection of any other ordinary claims. So the supreme court of your state have held, and it is but a just interpretation of the statute. In *Wellshear* v. *Kelley*, 69 Mo. 343, it is held that judgments and proceedings upon back taxes are in all respects as valid and binding as in ordinary cases, and can be assailed collaterally for defects available only to the defendant in the original suits, which are cured by the verdict and judgment; also that the ordinary presumptions as to the validity of sales in judicial proceedings prevail in tax cases, under the act of 1877.

Now, it is conceded that a mere inadequacy of price at a judicial sale, openly and fairly conducted, is not ground for setting aside such sale, unless it be so gross as to shock the conscience. It is contended, however, that, where there is a great inadequacy, trifling irregularities affecting the conduct of the parties to the suit are sufficient to justify a court of equity in taking possession of the matter, and setting aside the sale. I have no doubt that that is true; and that if the conduct of the plaintiffs in the suits, or the purchasers at the sale, is, even in perhaps minor matters, such as to be oppressive, such as to prevent a further price being realized, such as to mislead the defendants, or anything of that kind, the sale ought not to stand, and the court will seize hold of these and set aside the sale. But do any of these things appear in this case? It is alleged that the statute (section 6706) provides "that, when any person shall be the owner or original purchaser of a section, half section, quarter section, or half quarter section, block, half block, or quarter block, the same shall be assessed as one tract;" and, further: "The assessor shall consolidate all lands owned by one person into a section, and all town lots owned by one person in a square or block, into one tract or lot, where it is practicable; and for any violation of this section in unnecessarily dividing the same up into more tracts than one, or more lots than one, the county court shall deduct from his account for making the county assessment 10 cents for each tract or lot not so consolidated."

Here was a single body of 280 acres assessed as six different tracts; and that was not following the command of the statute. It is not alleged that the assessment, as to either one of these tracts, was excessive, or that the assessment in this way made the gross assessment

of the six tracts any higher than would have been the assessment of one tract of 280 acres; and section 6710 provides that no assessment on property, or charges for taxes thereon, shall be considered illegal on account of any informality in making the assessment. The best that you can say is that that was an informality and irregularity, and it was one which in no manner increased the amount of the tax. It took place prior to any suit brought for the collection of taxes.

It is true, also, that section 6837 says that all lands owned by the same person may be included in one petition,—in one count thereof,—and it is asserted that, by thus practically obtaining separate judgments upon the separate assessments against the separate tracts, the costs were increased. That is doubtless true, but these were matters which were cognizable in the court in which the suits were brought,—a court of general jurisdiction. The irregularities in the assessments existed prior to the suits. These were brought, as any ordinary suit is brought, to collect a confessedly just debt. The defendants had the same notice which any non-resident would have had if an attempt was made to collect a note by attachment, or a mortgage by foreclosure. Suppose the statute of the state required a man having several notes against the same party to include them all in one suit, and, in disregard of that, he brings separate suits on the separate notes, thereby increasing the costs, and no defense is made; the cases go to judgment, and a sale is had and confirmed; there is no claim of unfairness at the sale, or of collusion between the buyers. Would a court thereafter come in, and set aside those sales, because of a failure to comply with such a merely directory provision as to consolidation of all claims in one action? In other words, would a mere irregularity, slightly increasing the costs, disregarded by the defendants while the suit was pending, justify the court in setting aside a sale, even though there was an inadequacy of price; there being no other matters of partiality, oppression, unfairness, or misleading? That is just this case; and while there is sometimes a feeling that taxes are outside of the laws of ordinary indebtedness, and that proceedings to collect them must be looked upon with disfavor, and any slight defects taken advantage of to avoid them, yet it is a mistake. A tax is a debt due to the state, of as solemn an obligation as any debt from one individual to another; and when the state seeks, through its courts, by the ordinary proceedings of a court of justice, to collect these taxes, it seems to me something more than a mere inadequacy of price is necessary—something which shows that there was oppression upon the defendant—before a court would be justified in setting aside sales made thereunder.

So, taking the bill as it stands, and the facts as counsel say they exist, the demurrer must be sustained.