# FRANK N. PHELPS, Respondent, v. JEFFERSON BRUMBACK, Appellant.

### Kansas City Court of Appeals, April 25, 1904.

1. **TAXES: Payment of: Irregular Sale: Lien: Kansas City Charter.** Under the charter of Kansas City if there has been a valid assessment and levying of taxes against real estate the purchaser at the tax sale becomes subrogated to all the rights of the city notwithstanding the sale itself was irregular and conveyed no title.

2. **——: Assessment: Lots: Kansas City Charter.** The rule that separate and distinct parcels of land should be assessed separately is not imperative where the whole is still held as one parcel; then it is a mere informality.

3. **——: Payment of: Purchaser's Lien: Kansas City Charter.** The purchaser at a tax sale where his deed conveys no title can not have a lien if the amount bought is a mere infinitesimal part of an inch off of the side of such property and has practically no existence for the purpose for which the lots are acquired.

4. **——: ——: Personal Judgment: Kansas City Charter.** Though a purchaser at a tax sale may not have a lien on the purchased property to recover the taxes paid when his tax deed is insufficient to convey a title yet under the charter of Kansas City he is entitled to a personal judgment.

### On Rehearing.

5. **——: ——: Purchaser's Remedy: Statute.** Where the statute authorizes the imposition of the tax without prescribing the remedy, the usual remedy for the collection of debt may be had; and the charter of Kansas City while prescribing a remedy for the purchaser at the tax sale whose deed is insufficient to convey a title does not make such remedy exclusive of all others, and such purchaser may find relief in the ordinary remedy for the collection of debt.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED AND REMANDED.

*Jefferson Brumback* for appellant.

(1)   Assuming the validity of the tax of 1894 there can be no lien on the two inside portions sold out of the tract.   Carter v. Phillips, 49 Mo. App. 319; Charter of Kansas City, art. 5, secs. 41, 58 and 59; Taft v. McCullock, 135 Mo. 591; Gregg v. Jesberg, 113 Mo. 41; Heidelberg v. St. Francois Co. Ct., 100 Mo. 74; Charter, art. 5, sec. 37; St. Louis v. Howard, 119 Mo. 45; State v. Slover, 126 Mo. 659; State v. Ebbs, 89 Mo. App. 98; Charter, art. 5, secs. 66, 47, 57; Ross v. Railroad, 111 Mo. 26; Downing v. Still, 43 Mo. 317; Hirsch v. Weisberger, 44 Mo. App. 511; Mason v. Crowder, 85 Mo. 531; Bingham v. Birmingham, 103 Mo. 348; Charter, art. 5, secs. 47, 61, 60 and 37; Belz v. Bird, 31 Kan. 144; Corbin v. Bronson, 28 Kan. 535; Mitchell v. Lines, 36 Kan. 378; Douglass v. Boyle, 42 Kan. 395; Bruington v. Barber, 63 Kan. 28; Humphrey v. Yost, 62 Pac. 550; Burdick v. Bingham, 38 Minn. 482; Sullivan v. Donnell, 90 Mo. 278; Session Acts 1875, p. 240, sec. 72; Oster v. Rabeneau, 46 Mo. 595; Holland v. McCarty, 24 Mo. App. 87; Miller v. Hoffman, 26 Mo. App. 204; Rall Bros. v. McCrary, 45 Mo. App. 371; Lumber Co. v. Brewing Co., 78 Mo. App. 233; Bowerman v. Lackawana Mining Co. (not reported).   (2)   Assuming the validity of the tax and sale of 1894 there could be but one lien and one cause of action to enforce it.   The splitting of the cause of action to obtain a separate lien against each of the three portions of the parcel taxed prevents respondent from having any lien.   Charter, art. 5, secs. 14, 20, 38, 40, 41, 47, 43; Newham v. Kenton, 79 Mo. 382; Ross v. Ross, 81 Mo. 88; Reed v. Batt, 100 Mo. 67; Bliss on Code Pleadings (3 Ed.), sec. 118, p. 118; Morrison v. Florian, 76 Mo. App. 649; Willard v. Sperry, 16 J. R. 121; Cussleberry v. Forques, 27 Ill. 172; Bank v. Tracy, 141 Mo. 258; Charter, art. 5, secs. 47, 57 and 61; State v. Railway, 114 Mo. 11; Charter,

art. 5, secs. 14, 15, 16, 17, 18, 19, 20; Black on Tax Titles (2 Ed.), sec. 261, p. 324, ch. 15. (3) The single valuation of, and single tax against, the three lots were both illegal and therefore there can be no lien. Charter, art. 5, secs. 14 and 20; State ex rel. v. Railway, 114 Mo. 9; Cooley on Taxation (2 Ed.), p. 401, chap. 12; Charter, art. 5, sec. 66; Hamilton v. Fond du Lac, 25 Wis. 495; Burke v. Brown, 148 Mo. 309. (4) No lien can be allowed because each of the three minute portions is too small to be covered in ejectment, if any one should get a deed purporting to convey them under foreclosure of a lien. Neither portion can be surveyed nor occupied. Neither portion is property. Sedgwick and Wait on Trial of Title to Land (2 Ed.), p. 52, sec. 97, chap. 3; R. S. 1899, secs. 10188, 10186, 10184; Charter, art. 5, sec. 41; Smith v. Kenney, 89 Ill. App. 298; Rigney v. City of Chicago, 102 Ill. 64; Glos v. Furman, 164 Ill. 590; 1 Cooley's Blackstone (3 Ed.), p. 321; 2nd book of Blackstone, chap. 1, pp. 1 and 2; 1st book of Blackstone, ch. 1, pp. 89, 138, 139. (5) There can be no lien because the sale for delinquent taxes was not continued from day to day, or otherwise, from the first Monday of November, 1894, to the sixteenth day of November. Charter, art. 5, secs. 37, 40, 43 and 47; Gregg v. Jesberg, 113 Mo. 41.

*Charles B. Adams* and *Metcalf & Brady* for respondent.

(1) The tax was legally assessed against lots 85, 86 and 87 as a separate and distinct parcel of land. McQueston v. Swope, 12 Kan. 32; Hall v. Dodge, 18 Kan. 280; Dodge v. Emmons, 34 Kan. 732; Wright v. Cradlebaugh, 3 Nev. 310; People v. Culverwell, 44 Cal. 620. (2) Even if appellants' construction of the charter is correct, that each lot should have been separately assessed, the assessment as made, although irregular, would still stand as a valid tax against the

property.    Section 66, article 5, of the charter is
broad enough to cure any such erroneous or irregular
assessment and preserve the city's lien.    (3)    Aside
from the question of the validity of the tax as originally
assessed, the only question presented for determination
by this court, is the right of respondent to a lien on the
property covered by the tax deed for taxes, penalties
and costs as provided for in section 59, article 5, of the
charter.    Cooley on Taxation (2 Ed.), p. 476; White
v. Shell, 84 Mo. 573; Pitkin v. Roebel, 104 Mo. 509;
Pitkin v. Shacklett, 106 Mo. 571; Bingham v. Birming-
ham, 103 Mo. 345; French v. Edwards, 13 Wall. 506;
City Charter, sec. 41, art. 5; Lackland v. Nevins, 3 Mo.
App. 335; Watson v. Priest, 9 Mo. App. 263.

BROADDUS, J.—The petition in this case con-
tains six counts.    The first three were counts in eject-
ment; and the fourth, fifth and sixth were for the re-
covery of money paid at a certain tax sale, with penal-
ties, interest, cost of recording tax certificate, and cost
of deed, as provided by section 59, article 5, of the char-
ter of Kansas City.    The property on which the assess-
ment was made is known as lots 85, 86 and 87 of T. A.
Smart's Third Continuation, an addition to Kansas
City, Missouri.    The three lots were assessed as one
parcel for taxes for the year 1894 at which time one
David Orrison was the owner.    The said Orrison hav-
ing failed to pay the tax assessed against the property,
the city treasurer advertised the lots with other lands
for sale for delinquent tax to take place on the first
Monday of November, 1894, which was the fifth day of
said month; and on which day said treasurer began to
sell lands for such delinquent taxes, which sales were
continued from day to day until on the sixteenth day of
said month at which time he offered the three lots for
sale as one parcel and one, C. Winfrey, offered to pay
the amount of the tax, interest and cost, then amounting
to $64.86 for the south one-three hundredths inch of

each of the three lots designated by him at the time he offered the bid. Winfrey paid the amount named and the three portions thus designated were sold to him. The city auditor made a record of the sale as required, describing the three lots as one tract and showing the sale so made to Winfrey, and made and delivered to him a certificate of purchase of the date of sale, which was afterwards properly acknowledged. Some lands were sold by the treasurer on November 5, but none on the next day on which was held an election for State and county officers. Property was offered and sold, however, on all the subsequent days up to and including the seventeenth of said month, except Sundays, but there was no record made of adjournment from one day to another. On September 5, 1895, said Winfrey sold and transferred his certificate of purchase to plaintiff Phelps; and the city treasurer made him a deed for three-hundredths inch off the south side of each of said lots. The valuation placed upon the three lots as one parcel was $5,280. After the institution of this suit the assessor, at the instance of the plaintiff, apportioned this amount among the three lots as follows: $2,000 to lot 85; $1,640 to lot 86; and $1,640 to lot 87. And on this basis he apportioned the said bids of Winfrey as follows: $24.57 for south one-three hundredth inch of lot 85; $20.15 for south one-three hundredth inch of lot 86, and $20.14 for south one-three hundredth inch of lot 87. These apportionments were not made of record in any of the city's books but they were adopted by the trial court. Since said assessment of said property and sale for said taxes, the defendants, who then held liens on the same by deed of trust, became the owners in fee of the same and were such owners at the time of the judgment herein. It appears from this statement that Winfrey did not apportion his bid between the three lots but his one bid in the gross applied to all the said lots.

It is provided by section 59, article 5, of the Kansas

City charter: "If any person claiming title under a tax deed . . . shall be defeated in any suit by or against him for the recovery of the real property conveyed or purporting to be conveyed by such tax deed, the successful claimant shall be adjudged to pay such person claiming under such tax deed the full amount of all money paid by the purchaser at the tax sale for such real property, and ten per centum of such amount immediately added with twenty-four per cent interest per annum on the whole amount thus made from the day of sale . . . which judgment shall be a lien upon the real property in controversy, and shall bear interest at the rate of twenty-four per cent per annum and may be enforced by execution as in other cases of judgments and decrees of such court."

It was admitted on the trial that the plaintiff was not entitled to recover on his ejectment counts but the court found for him on the three remaining counts and rendered judgment on each enforcing his lien under the charter on the south three-hundredths inch of each lot. Defendants appealed.

Defendants contend, assuming the validity of the taxbill for the year 1894, there could be no lien on the two inside portions sold. Section 41 of said chapter aforesaid provides among other things: "The person who will pay the taxes . . . for the least number of front feet or inches of any lot or parcel of real property to be taken from either side thereof, the side to be designated by the bidder at the time he offers his bid, shall be deemed the purchaser for the smallest portion of such lot or parcel of real property."

The theory of defendants is that, as the property was assessed as one parcel it should have been sold as such, or so much thereof as was necessary to pay the taxes.

In Taft v. McCullock, 135 Mo. 588, it was said: "After the tax has been imposed by a legal and regular assessment and levy, the duty of the owner of the prop-

erty to pay the taxes arises.   In the enforcement of the
payment by legal proceedings, or in selling the prop-
erty for its payment under statutory process, the owner
stands upon his legal rights and may demand that the
requirements which affect his rights and interests shall
be complied with, at least substantially.   But in ad-
justing the equities, which this statute gives to the pur-
chaser, the court which, by the strongest implication, is
required to exercise its equity powers, can go behind
mere formal and technical requirements and ascertain
if the tax which was discharged by the purchaser was
valid, and if the owner of the land had neglected to pay
it before or after the sale.   When these facts are shown,
the equities which the statute declares are complete.
The purchaser pays an obligation due from the land-
owner to the State; the State receives and uses the
money in payment of government expenses and other
obligations.   The provisions of the statute are ap-
proved by the judicial mind as being eminently just
and equitable.   The deed of the collector is made prima
facie evidence of the proper assessment of the property
and levy of the tax.   In this proceeding the *perform-
ance of subsequent official duties and details provided
for the collection of the tax is immaterial and is to be
conclusively presumed.*"   We have placed the italics.

In that case the defect in the proceedings was the
failure of the clerk to authenticate the tax book by the
seal of the court.   We have quoted much from the
opinion  because  of its sweeping and comprehensive
holding. It seems to us that if the tax itself is admitted
to be valid, every subsequent act of the officials in en-
forcing its collection, whether regular or otherwise, be-
comes immaterial, and all the equities are in favor of
the purchaser under said decision.   If the State had a
valid claim for taxes the purchaser at the tax sale be-
came subrogated to all the rights thereto which is not
subject to be defeated by mere irregularities.

And it is held that if the tax deed which fails to

make the proper recitals is void, still, the purchaser at the tax sale, although he fails in his ejectment suit, is entitled to recover the purchase price at the sale. Gregg v. Jesberg, 113 Mo. 35; White v. Shell, 84 Mo. 569; Pitkin v. Reibel, 104 Mo. 505. We think it is clear under the authorities that if the city had a valid assessment and levy of the taxes against the property in controversy, the purchaser at said tax sale, by reason of his purchase, became subrogated to all the rights of the city, notwithstanding the sale itself was irregular and conveyed no title.

But the defendants urge that in fact the city did not have a lien on the property because it was not properly assessed. If true, this is a vital objection, for then the proceedings would have been void from the beginning and a sale to enforce the collection of the tax would be a nullity. Upon this point we are cited to State ex rel. v. Railroad, 114 Mo. 1. An examination shows that the court there refused to uphold the tax because the property when assessed was not accurately described. That "description was too indefinite and uncertain to authorize the enforcement of the tax lien and that extrinsic evidence was inadmissible to cure it." In Burke v. Brown, 148 Mo. 309, the suit for taxes was defeated on the ground that there had been no valid levy of such taxes.

Section 14, article 5, of the charter, requires: "The assessor shall return on his assessment book of real property, in tabular form, each parcel of real estate subject to taxation, with the description and value thereof, in numerical order as to the lots and blocks, or sections, or subdivisions," etc. And, "when any property is not laid off in lots or blocks, the assessor shall describe the same by pertinent description," etc.

"It is generally made imperative that separate and distinct parcels of land shall be assessed separately. This is certainly essential where the lands are resident or seated, and in the occupancy of different persons,

each of whom has a right to know exactly what demand the government makes upon him." Cooley on Taxation, 400. But this rule is not imperative where the whole is still owned as one parcel. Cooley on Taxation, 402; Jennings v. Collins, 99 Mass. 29. It seems to have been a mere informality at most. Davis v. McGee, 28 Fed. 867. No error or irregularity in any assessment of land, "shall in any manner affect or impair the validity of any tax or any sale or other proceeding for their collection." Sec. 66, art. 5, supra. As the property, the three lots, were held by Orrison when the tax was assessed, and conveyed by him as such to the trustee, and by the trustee to defendants, their assessment as one parcel was, to say the most, a mere irregularity if that under said section 14, supra, and its validity is supported by all the authorities.

The defendants contend that there can be no lien because the sale for delinquent taxes was not continued from day to day, or otherwise, from the first Monday in November, 1894, to the sixteenth day of the same month, and cite us to Gregg v. Jesberg, 113 Mo. 34, as authority for their contention. In that case, although it was held that the tax deed was void, it was also expressly held that the purchaser at the tax sale could recover from the owner of the land the money he had paid on his bid.

And it is further claimed that, "no lien can be allowed because each one of the three minute portions is too small to be recovered in ejectment." In Gloss v. Furman, 164 Ill. —, it was decided: "A tract of land described in a tax deed as the infinitesimal part of an inch off a certain property can not be bounded, located or taken possession of, and practically has no existence for the purpose for which lands are acquired." See also Sedgwick and Wait on Trial of Title, p. 52, sec. 97. It seems to us that it would be an idle undertaking to attempt to enforce a lien on three-hundredths of an

inch of realty; for which reason the judgment herein is a nullity.

Under section 59, of the charter of Kansas City, however, the plaintiff was entitled to a personal judgment against defendants upon the evidence with a proper petition. The cause is therefore reversed and remanded so that plaintiff may amend his petition, if he desires, and take a personal judgment. All concur.

### ON REHEARING.

ELLISON, J.—A rehearing was granted in this cause that the closing paragraph in the opinion wherein Judge BROADDUS asserted that the plaintiff had a right to a personal judgment against the defendant for taxes paid by him, might be again considered. The defendants attack the soundness of that construction of the city charter.

It is not doubted anywhere that there is a duty and obligation resting upon the citizen to pay the taxes which are assessed against his property. And whether taxes should be considered as an ordinary debt, or not so considered, can make no difference in the duty and obligation of the delinquent. It ought therefore to follow, that an implied promise to pay them arises as in other cases of monetary obligation, for which an action of assumpsit would lie. However, the payment and collection and mode of collection of taxes, are necessarily regulated by statute, and, if the statute names a remedy which may be fairly said to be exclusive, no other can be had. State ex rel. v. Snyder, 139 Mo. 549, 554.

But if the statute authorizes the imposition of the tax and does not prescribe a remedy for its collection, the usual remedy for the collection of a debt may be had. State ex rel. v. Severance, 55 Mo. 378, 389. This rule was again stated by our Supreme Court in the Snyder case to which we have just referred. The same

rule is stated in Perry County v. Railroad, 58 Ala. 563, and City v. Railroad, 112 Ala. 557. So it was ruled by the Supreme Court of the United States that a personal liability for a tax may be invoked unless the statute expressly, or by implication, excludes such remedy. Savings Bank v. United States, 19 Wall. 227. And it was held in the Snyder case, that the statute of 1889, sections 7681 to 7684 and section 7608 (same as present statute of 1899, sections 9302 to 9304, inclusive, and section 9228) provided a full and complete remedy, by implication excluding a personal judgment. Those statutes provided for a special judgment against the real estate and a special execution thereon; and also provided for a seizure of all the landowners' personal property. These special remedies were well held to exclude an individual liability.

But the charter under consideration, as set out in the original opinion, not only does not exclude individual liability, but it plainly provides for such liability by directing a personal judgment against the landowner in the cases therein cited. It reads that when the delinquent owner defeats the title of him who has paid the tax which such owner should have paid, he "shall be adjudged to pay such person the full amount of all money paid," both at the tax sale and subsequently, with certain interest. It seems clear that the intent of the charter is to say to the delinquent owner, that if you choose to defeat the title of him who has paid your taxes after you failed in your duty to pay them, you must submit to a judgment against yourself for the amount he has paid with interest. Various conditions have been provided in different States as a consequence of the delinquent owner defeating title of him who has bought his land and paid his taxes. 2 Cooley on Taxation, 1058-1062. We formerly had such provisions in this State, and it has been held that recovery can be had against the owner for the taxes paid by the defeated purchaser at the tax sale. Pitkin v. Reibel, 104

Mo. 505, 512; Pitkin v. Shacklett, 106 Mo. 571; Taft v. McCullock, 135 Mo. 588. In the latter case it was said: ''The purchaser pays an obligation due from the land-owner to the State; the State receives and uses the money in payment of governmental expenses, and other obligations. The provisions of the statute are approved by the judicial mind as being eminently just and equitable.'' In neither of these cases does it appear whether the judgment was a general judgment against the land-owner and for enforcement of a lien against the property; or whether it was a special judgment against the land only; and that question was not raised. But the language of the court is that the landowner should be adjudged to pay, and we can conceive of no good reason why the broad terms of the statute should be narrowed in giving effect to provisions so fair, just and equitable. In Kansas, the rule on a similar statute seems to be assumed to be as contended by defendant. We do not know what other portion of the revenue law of that State may justify such view. We do not regard the ac-cidental circumstance that a case from that State in which that view is taken is referred to in White v. Schell, 84 Mo. 569, as of any importance. It was not cited on the point here in controversy.

Defendant seems to regard the provision at the close of the section, that the judgment shall be a lien upon the land, as of especial significance looking to a legislative intention to authorize only a special judg-ment *in rem* against the land. We do not attach such importance to it. There are a variety of instances (not necessary to set out) in which there is a special judg-ment against land with a general personal judgment over against the individual. We regard the provision for a lien as merely an additional security to the pur-chaser. So that insolvency might not (entirely at least) defeat his claim for reimbursement.

But recurring to the authorities already men-tioned, where is there any room, in the face of the ex-

plicit terms of this charter, that the delinquent landowner "*shall be adjudged to pay*" the purchaser, for saying that the lawmakers intended to exclude every remedy except that of a special lien against the property? The charter certainly does not express such intention, nor does the language in which it is couched raise such implication.

We therefore adhere to the conclusion announced by Judge Broaddus and reverse the judgment and remand the cause. All concur.